**Geneva ORTIZ, Individually and for the Benefit of Mario Ortiz, Marisela Ortiz, and Maritza Ortiz, Appellant**

v.

**Tena PATTERSON, M.D., and the Family Medical Center at North Garland Clinic, a Healthcare Entity, Appellees.**

No. 05–10–01356–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 2012.

John E. Collins, John E. Agnew, Burleson, Pate & Gibson, L.L.P., Dallas, TX, for Appellant.

Stan Thiebaud, Cathryn Ruth Paton, Stinnett Thiebaud & Remington, Michael A. Yanof, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION NUNC PRO TUNC

Opinion By Justice MOSELEY.

In two issues, Geneva Ortiz, individually and for the benefit of Mario Ortiz, Marisela Ortiz, and Maritza Ortiz, contends the trial court erred: (1) by granting the mo-

tion to dismiss Ortiz' medical malpractice claim filed by Tena Patterson, M.D., and the Family Medical Center at North Garland Clinic, a healthcare entity, on grounds Ortiz' expert report was inadequate; and (2) by denying Ortiz' motion for extension of time to supplement the expert report or motion for new trial. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b), (c), (*l*), (r)(5) & (6) (West 2012). In a third issue, Ortiz contends the trial court erred by granting the motion to dismiss as to the medical center, arguing she was not required to submit a separate report on the medical center when she alleged only vicarious liability against it.

We overrule Ortiz' first issue to the extent it challenges the granting of appellees' motion to dismiss because Galatzan's causation opinion was deficient. However, we sustain Ortiz' first issue to the extent she challenges the granting of appellees' motion to dismiss based on Galatzan's alleged lack of qualifications as an expert. Additionally, we sustain Ortiz' third issue challenging the trial court's ruling on the motion to dismiss as to any claim against the medical center based on vicarious liability for Patterson's alleged negligence. As to all other claims asserted against the medical center, we overrule her third issue.

Lastly, in light of the supreme court's decision in *Scoresby v. Santillan,* 346 S.W.3d 546 (Tex.2011), we sustain Ortiz' second issue in part and overrule it in part. We reverse the trial court's order granting appellees' motion to dismiss the claims against Patterson and any claims against the medical center based on vicarious liability for Patterson's alleged negligence. We affirm the trial court's order granting the motion to dismiss as to any other claims asserted against the medical center. We remand this case in the interest of justice to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

Ortiz alleged her husband Raul went to the medical center on March 4, 2008, and was examined by Patterson, a family practice physician working at the medical center, "regarding his upper respiratory complaints." Raul died the next day.

Ortiz alleged appellees breached the standard of care in their treatment of Raul and that such failures proximately caused his death. Specifically, Ortiz alleged appellees were negligent by failing to: (1) diagnose Raul's condition as pneumonia; (2) perform tests that would disclose his conditions; and (3) refer him to an emergency healthcare facility for immediate treatment. She alleged that such failures were a proximate cause of Raul's death.

Within 120 days of filing suit, Ortiz served counsel for both Patterson and the medical center with a letter from Leigh S. Galatzan, M.D., purporting to meet the expert report requirement set out in section 74.351(r)(6), and Galatzan's curriculum vitae. Appellees filed Objections to Plaintiffs' Chapter 74 Expert Report and a motion to dismiss. They objected to Galatzan's report as insufficient on three grounds. First, they argued that Galatzan was not qualified to render an expert opinion because he failed to show that "he has specific training and experience regarding the care at issue. . . ." Second, they argued the report was inadequate as to Patterson regarding the causation element because the report failed to set forth how Patterson caused the alleged harm or, alternatively, the report was "speculative and conclusory" as to causation. Third, they argued that because the report failed to implicate the medical center, it was "no report" as to any claims as to it, requiring dismissal of "any and all direct claims"

against the medical center. Appellees moved for dismissal with prejudice and requested costs and attorney's fees.

Ortiz responded to appellees' motion to dismiss; she challenged appellees' grounds for dismissal and requested a thirty-day extension to cure deficiencies, should the court determine Galatzan's report was deficient.

The trial court heard appellees' motion and granted it, dismissing Ortiz' claims against appellees. Subsequently, Ortiz moved for an extension of time to supplement her expert report and moved for new trial. Appellees responded. The trial court denied Ortiz' motion by written order. This appeal followed.

## II. APPLICABLE LAW

■ Chapter 74 of the civil practice and remedies code requires a claimant pursuing a health care liability claim to serve on each party one or more expert reports, with a curriculum vitae of each expert listed in the report, for *each* physician or health care provider against whom a liability claim is asserted, no later than 120 days after the original petition is filed. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). "When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex.2008) (per curiam) (citing with approval *Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877 (Tex.App.-Dallas 2006, no pet.)).

■ An "expert report" is defined as follows:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered

by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). An expert report must provide enough information to fulfill two purposes: it must inform the defendant of the specific conduct the plaintiff has called into question, and provide a basis for the trial judge to conclude that the claims have merit. *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 496 (Tex.App.-Dallas 2010, no pet.). A report is deficient if it merely states the expert's conclusions about the standard of care, breach, and causation. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). "[T]he expert must explain the basis of his statements to link his conclusions to the facts." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002) (per curiam). We determine whether a causation opinion is sufficient by considering it in the context of the entire report. *Bakhtari*, 317 S.W.3d at 496.

Relevant to this appeal, "expert" has two meanings: (1) "with respect to a person giving opinion testimony regarding whether *a physician departed from accepted standards of medical care*, an expert qualified to testify under the requirements of Section 74.401"; and (2) "with respect to a person giving opinion testimony about *the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim*, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(A), (C) (emphasis added).

Section 74.401 provides in relevant part:

> In a suit involving a health care liability claim against a physician for injury to or

death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id.* § 74.401(a).

A court shall grant a motion challenging the adequacy of an expert report only if the report "does not represent an objective good faith effort to comply" with the statutory definition of an expert report. *Id.* § 74.351(*l*).

If an expert report has not been served within the 120–day period because elements of the report are found deficient, the court may grant one thirty-day extension to the claimant in order to cure the deficiency. *Id.* § 74.351(c).

## III. STANDARD OF REVIEW

■ We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *Methodist Hosp. of Dallas v. King*, 365 S.W.3d 847, 849 (Tex.App.-Dallas 2012, no pet.). The abuse of discretion standard also applies to a trial court's decision to grant or deny a thirty-day extension to cure a deficient report. *Samlowski v. Wooten*, 332 S.W.3d 404, 408 n. 2 (Tex. 2011) (Medina, J.) (plurality op.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *King*, 365 S.W.3d at 849–50.

A trial court does not abuse its discretion simply because it may decide a matter within its discretion differently than an appellate court. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *King*, 365 S.W.3d at 850.

## IV. DISCUSSION

In her first issue, Ortiz contends the trial court erred by granting appellees' motion to dismiss as to Patterson for two reasons: (1) Galatzan was qualified to render the opinions in the expert report; and (2) Ortiz' expert report represented a good faith effort to provide a fair summary of Galatzan's opinion as to causation.

## A. Galatzan's Curriculum Vitae and Expert Report

Galatzan's curriculum vitae lists his medical education, post-graduate training (in general surgery and family practice), licensure, and private practice, including years of experience in family practice (1981–1988) and emergency medicine (since 1999).

The first paragraph of Galatzan's three-paragraph, two-page report relates he is a practicing physician, licensed by the State of Texas in 1977, and board certified in emergency medicine. He said that "[b]ased on my education, training, years of experience, including seven years as a family practitioner in the Dallas area, the scope of my practice and board certification," he was qualified to review the facts and determine "whether or not treatment rendered was within the standard of care for this condition and the resulting consequences." Further, he had "been presented on numerous occasions with factual situations similar to those presented to Dr. Tena Patterson in this case."

The second paragraph relates that Galatzan reviewed medical records from Patterson and the medical center as well as medical records from Baylor Medical Center at Garland for service on March 5 and the March 6 autopsy report.

We quote the third paragraph in its entirety, with our emphasis [1]:

> In my opinion the standard of care for a practicing physician was not met on March 3, 2008, when Mr. Ortiz presented himself for evaluation and treatment. Considering that the deceased described symptoms of cough, congestion, subjective fever for one week, that he had been vomiting, and that his heart rate at the time of examination was 145 beats per minute, the examining practitioner should have recognized that Mr. Ortiz was very ill. This presentation contradicts the statement made by the examiner [sic] "in no acute distress." In fact the normal exam that was documented is not at all consistent with the complaints, the vital signs, and especially with the autopsy findings of bilateral pneumonitis and pulmonary edema. A patient presenting as Mr. Ortiz did on March 3, 2008, should have had a pulse oximetry assessment, and a chest x-ray. *Failing to do the appropriate tests, make the correct diagnosis, and recognize the clinical severity and risks involved in not referring Mr. Ortiz for admission to a hospital did not meet the standard of care, and contributed to the premature death of this man. If Mr. Ortiz had received appropriate evaluation and* *treatment it is more likely than not that he would have survived this ordeal.*

## B. Expert's Qualifications

█ The illness involved in this claim was pneumonia. Galatzan's curriculum vitae and report demonstrated that he was a practicing physician; he had knowledge of the accepted standards of medical care for the diagnosis, care, or treatment of pneumonia; and he was qualified on the basis of training and experience to offer an expert opinion regarding those accepted standards of medical care and the causal relationship between the failure to diagnose and treat a patient presenting "acute" and "severe" symptoms and the risk of death from a serious illness such as pneumonia between twenty-four and forty-eight hours after presentation. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(a).

In their motion to dismiss, appellees relied on *Kettle v. Baylor Medical Center at Garland,* 232 S.W.3d 832, 836–37 (Tex. App.-Dallas 2007, pet. denied).[2] That case concerned the implantation of a cardiac pacemaker in a patient suffering from chronic obstructive pulmonary disease. There, this Court considered whether an expert with cardiology expertise was qualified to opine on a pulmonologist's conduct. In our deliberation, we considered whether medical doctors were qualified to opine across specific practice specialities. *See id.* at 840 (citing *Broders v. Heise,* 924 S.W.2d 148, 153–54 (Tex.1996)); TEX.R. EVID. 702 ("Testimony by Experts").[3]

---

1. Ortiz alleged that Raul was seen at the medical center on March 4, 2008. Galatzan states the date as March 3, 2008.

2. In their motion to dismiss, appellees relied on section 74.402(b), which concerns the qualifications of an expert opining as to a health care provider. However, section 74.401(a) concerns an opinion as to whether a *physician* breached the accepted standard

of care. In light of the direct claims against Patterson, a physician, at issue here, we consider the standard set out in section 74.401(a).

3. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or edu-

In contrast, this case concerns a patient presenting "acute" symptoms of "clinical severity," not a "chronic" disease. Galatzan demonstrated in his curriculum vitae and report that he had the training and experience to give expert opinion on the standard of care applicable to a "very ill" patient presenting week-long symptoms of "clinical severity," necessitating tests available to a family practice physician, either in a "primary care" office or a hospital on an emergency basis, given the short amount of time between Patterson's observations and Raul's death. Also, Galatzan's experience and his statements that he had been presented with "factual situations similar" to those presented to Patterson established both he and Patterson were family practice physicians. In reaching this conclusion, we reject appellees' argument that Galatzan, as an emergency medicine physician and one whose family practice was twenty years in the past, was not qualified to opine on the "primary care" rendered during an "office visit." We conclude the trial court abused its discretion by granting appellees' motion to dismiss on grounds that Galatzan was not qualified to render an opinion on the standard of care and causation in the expert report. We sustain Ortiz' first issue to this extent.

## C. Adequacy of Report as to Causation

▆▆▆▆ In their motion to dismiss, appellees argued that the italicized language above failed to provide any proof that a negligent act or omission by Patterson was a substantial factor in bringing about the harm and without which the harm would not have occurred to Raul, which is the legal standard for causation. *See IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798–99 (Tex. 2004). In *Bowie*, 79 S.W.3d at 52–53, the report's causation element was addressed

by the statement that "if the x-rays would have been correctly read and the appropriate medical personnel acted upon those findings then Wright would have had the possibility of a better outcome." An opinion that fails to provide information linking a conclusion (a patient's "better outcome") with the physician's alleged breach (incorrectly reading and acting on x-rays) is deficient because it is conclusory. *Id.* at 53. As the supreme court explained, an opinion that relies on inference, such as that the alleged breach precluded a quicker diagnosis and treatment, fails the good-faith standard. *Id.*

The two italicized sentences, like the statement in *Bowie*, merely state a conclusion about causation; they are equivalent to the conclusory opinion that "the violations of the standard of care were a proximate cause of this patient's injury." *See, e.g., Longino v. Crosswhite*, 183 S.W.3d 913, 917 (Tex.App.-Texarkana 2006, no pet.) ("Subsequently, this prolonged symptomatology was a cause of Ashton's significant and permanent neurological injures."); *Barko v. Genzel*, 123 S.W.3d 457, 460 (Tex.App.-Eastland 2003, no pet.) ("These violations of the standards of emergency medical practice were a proximate cause in this patient's injury."). Like the experts' causation opinions in *Bowie*, *Longino*, and *Barko*, Galatzan failed to explain how Patterson's alleged breach of the standard of care caused Raul's alleged injury.

In reaching this conclusion, we reject Ortiz' argument that Galatzan's report "provides a fair summary of his opinions linking Dr. Patterson's breach of the standard of care to Mr. Ortiz's death." The authorities Ortiz relies on show experts tying the facts of the case to their opinions, unlike here. For example, in *Adeye-*

cation, may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702.

*mi v. Guerrero,* 329 S.W.3d 241, 245 (Tex. App.-Dallas 2010, no pet.), the expert explained specifically that a delay in ordering a CT scan after a patient's fall delayed the discovery of the "intercranial hematoma" caused by the fall, worsening a condition and resulting in seizure and other specific neurological damage; the expert "specifically stat[ed] what Dr. Adeyemi should have done and what happened because she failed to do it." In *Mosely v. Mundine,* 249 S.W.3d 775, 780 (Tex.App.-Dallas 2008, no pet.), the expert explained how a failure to detect a "1 cm nodule" in an x-ray resulted in a "6 cm mass" in the lung, requiring surgery and chemotherapy; "[h]ad this cancer been detected [earlier] the likelihood of survival ... would have been significantly greater with much less invasive treatment protocol." Unlike in *Adeyemi* and *Mosely,* Galatzan failed to explain how Raul's condition worsened from "very ill" to death from pneumonia and pulmonary edema in a short time as a result of failing to conduct certain tests and admit him to a hospital without relying on impermissible inferences. We conclude the trial court did not abuse its discretion by granting appellees' motion to dismiss on grounds that the expert report was deficient as to the issue of causation. We overrule Ortiz' first issue to this extent.

## D. Separate Report as to the Medical Center

In her third issue, Ortiz contends the trial court erred by dismissing her claims against the medical center, arguing she was not required to submit a separate report as to the medical center when the basis for its liability is vicarious, not direct. To the extent Ortiz asserts a vicarious liability claim based on Patterson's alleged negligence against the medical center, we agree.

The parties dispute whether Ortiz asserts direct claims against the medical center based on its own negligence or vicarious liability claims based on Patterson's alleged negligence, or both.[4] Because this dispute relates to the sufficiency of the pleading, a hearing on special exceptions would have been the proper vehicle for bringing this dispute before the trial court.[5] *See* TEX.R. CIV. P. 91. We decline to decide the issue here.

 To the extent Ortiz alleged a vicarious liability claim against the medical center based on Patterson's alleged negligence, we agree with Ortiz that the trial court erred by granting appellees' motion to dismiss. *See Gardner,* 274 S.W.3d at 671–72. We sustain Ortiz' third issue to this extent.

---

4. Ortiz' original petition states:

 V.

 Plaintiff would show that Defendants at the time on the occasion in question failed to meet the standard of care of a reasonable and prudent physician and/or healthcare provider in their care and treatment of Decedent Raul Ortiz and that such failures as set forth herein among others were a proximate cause of Raul Ortiz.

 VI.

 Plaintiff would show that as a direct and proximate result of the failure of Defendants to meet the standard of care of a reasonable and prudent physician and/or healthcare provider, Raul Ortiz died, caus-

 ing Plaintiff individually and as representative of the wrongful death beneficiaries to suffer damages of a pecuniary nature ...

 IX.

 WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and upon final hearing hereof she have and recover of and from Defendants jointly and severally damages in the amount determined by a jury ...

5. Although the medical center included special exceptions in its original answer, the record does not show the trial court's consideration of them.

However, Galatzan's expert report did not address any negligent act, practice, or omission by the medical center. The only statement relating to the medical center in his report is: "I have reviewed the medical records from Dr. Tena Patterson and the Family Medical Center at Garland ..." That statement does not qualify as an expert report as to the medical center. *See Scoresby*, 346 S.W.3d at 549 ("a document utterly devoid of substantive content will [not] qualify as an expert report .... we hold that a document qualifies as an expert report if it contains a statement of opinion ... indicating that the claim asserted ... has merit."); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6).

Section 74.351 requires an expert report "for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). If an expert report is not served as to a defendant health care provider, the court shall dismiss the claim with respect to that health care provider with prejudice. *See id.* § 74.351(b); *Estorque v. Schafer*, 302 S.W.3d 19, 29 (Tex. App.-Fort Worth 2009, no pet.); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 921 (Tex.App.-Dallas 2007, pet. denied). Because Galatzan failed to submit an expert report relating to any direct claim against the medical center based on its own negligence, the trial court properly dismissed any such claims. We overrule Ortiz' third issue to this extent.

### E. Extension of Time to Supplement the Expert Report

 In her second issue, Ortiz contends the trial court erred by denying her Motion for an Extension of Time to Supplement the Expert's Report, or Motion for New Trial.[6] When an expert report has not been served within the required time frame because elements of the report are deficient, the trial court may grant one thirty-day extension to cure the deficiency. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(i). However, when the expert report is absent, rather than deficient, the trial court may not consider an extension. *Samlowski v. Wooten*, 332 S.W.3d 404, 404 (Tex.2011) (plurality op.); *Hollingsworth v. Springs*, 353 S.W.3d 506, 524 (Tex.App.-Dallas 2011, no pet.).

Because Ortiz failed to file an expert report as to any direct claim against the medical center, the trial court did not err by refusing to grant Ortiz a thirty-day extension to cure the non-existent report. We overrule Ortiz' second issue to this extent.

 In considering whether the trial court should have granted the thirty-day extension to cure the report as to the claim against Patterson, we are guided by the supreme court's recent decision in *Scoresby*. The supreme court stated, "The trial court should err on the side of granting the [extension] and must grant it if the deficiencies are curable." *Scoresby*, 346 S.W.3d at 549 (adopting the position taken by a plurality of the court in *Samlowski*). Likewise, when this Court interpreted the supreme court's *Samlowski* decision in *Biggs*, we reversed the trial court's order denying the extension and dismissing the claims. 336 S.W.3d at 859. Stating "in light of the various new criteria for the exercise of the trial court's discretion outlined in *Samlowski*," this Court remanded

---

**6.** Having concluded the trial court erred in granting appellees' motion to dismiss as to Galatzan's qualifications as an expert, we need not consider whether this case should be remanded to allow the trial court to consider a thirty-day extension to cure that deficiency. *See Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex.2007) (considering appealability of order granting thirty-day extension to cure qualifications-related deficiencies).

the case to the trial court "in the interest of justice" for further proceedings. *Id.* at 860.

In *Mitchell v. Methodist Hospital,* 335 S.W.3d 610 (Tex.2011) (per curiam), the supreme court did not disturb the Houston First Court of Appeals's conclusion that the deficiencies in the expert report were "extreme." However, the supreme court followed its decision in *Samlowski* and concluded the court of appeals had abused its discretion by failing to grant an extension to cure the deficient report. The supreme court reversed the court of appeals's judgment and remanded the case to the trial court for further proceedings. *Id.*

Here, as in *Scoresby, Samlowski, Mitchell,* and *Biggs,* the plaintiff requested an extension to cure pursuant to section 74.351(c). Appellees' argument that there is nothing in the record showing the report was curable and that Ortiz had two opportunities—at hearings on the motion to dismiss and on the motion for new trial—and failed to show the report was or could be cured is similar to the argument rejected by Justice Medina in his opinion, that is, the record did not establish that the deficient expert report would have been cured if the extension had been granted. Nevertheless, Justice Medina concluded "the interests of justice require a remand." *Samlowski,* 332 S.W.3d at 406 (Medina, J.). In light of *Scoresby, Samlowski, Mitchell,* and *Biggs,* we sustain Ortiz' second issue in so far as it challenges the trial court's decision not to grant a thirty-day extension to supplement Galatzan's report with respect to her claims against Patterson. We sustain Ortiz' second issue to this extent.

## V. CONCLUSION

We reverse the trial court's order granting appellees' motion to dismiss in part and remand this case in the interests of justice to the trial court for further proceedings consistent with this opinion.