**Reverse and Remand; and Opinion Filed July 10, 2013.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01067-CV

## DEBRA KNIGHTSTEP, P.A., Appellant
## V.
## MOLLIE JEFFERS AND JAMES JEFFERS, INDIVIDUALLY AND AS NEXT REPRESENTATIVES OF THE ESTATE OF JAMI KAY JEFFERS, Appellees

On Appeal from the 397th Judicial District Court
Grayson County, Texas
Trial Court Cause No. CV-11-1716

### MEMORANDUM OPINION
Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Moseley

Physician's Assistant Debra Knightstep appeals the denial of her motion to dismiss a health care liability claim under chapter 74 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011). In a single issue, Knightstep contends the expert reports filed in this case are insufficient.

The background of the case is well known to the parties; thus, we do not recite it here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We reverse the trial court's order and remand this case for determination of whether to grant a 30-day extension to cure deficiencies in the reports and for

further proceedings.

## BACKGROUND

Jami Jeffers went to Wilson N. Jones Memorial Hospital on December 25, 2009; she died there of cardiac arrest early the next morning. Jami's parents, individually and as representatives of her estate (the Jefferses), sued the hospital, Kevin Stacks, M.D.,[1] and Knightstep, a physician's assistant, for medical negligence in connection with Jami's treatment. The Jefferses alleged Knightstep was negligent by failing to provide a reasonable evaluation of Jami by directly examining and assessing her and by failing to timely manage Jami's hypoxia by providing serial physical assessments and continued investigation orders.

Within 120 days of filing suit, the Jefferses served preliminary expert reports of William Peacock, M.D. and Jennifer Moorfield, P.A. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Knightstep filed a motion to dismiss, *id.* § 74.351(b), which the trial court denied.

## APPLICABLE LAW AND STANDARD OF REVIEW

A chapter 74 expert report must provide:

> a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The report does not need to "marshal all the plaintiff's proof." *See Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012); *see also Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). However, it must represent an objective good faith effort to comply with the statutory definition of "expert report." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). To constitute a good faith effort, the

---

[1] In a separate appeal, this Court affirmed the trial court's order denying Stacks's motion to dismiss under chapter 74. *See Stacks v. Jeffers*, No. 05-12-00942-CV, 2013 WL 1188980 (Tex. App.—Dallas March 8, 2013, no pet.).

report must provide enough information to meet two requirements: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Hollingsworth*, 353 S.W.3d at 513 (citing *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)).

A report does not fulfill the statute's requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Id.* The report must contain sufficiently specific information to demonstrate causation beyond mere conjecture. *Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 379 (Tex. App.—Dallas 2013, no pet.). A court will not "fill gaps" in an expert report by drawing inferences or guessing what the expert likely meant or intended. *See Bowie*, 79 S.W.3d at 53. Instead, the expert must explain the basis for his statements and link his conclusions to the facts. *Id.* at 52.

We review a trial court's ruling on the adequacy of an expert report for an abuse of discretion. *See Hollingsworth*, 353 S.W.3d at 512 (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001)). A trial court abuses its discretion if it acts without reference to any guiding rules and principles, if it acts in an arbitrary and unreasonable fashion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

**ANALYSIS**

Knightstep contends the trial court abused its discretion by denying the motion to dismiss because the reports are conclusory as to causation and do not state how Knightstep's alleged breach of the standard of care caused Jami's death.

Both reports contain a summary of facts. Jami arrived at the hospital's emergency department around 12:30 p.m. with rapid breathing and a rapid heart rate. After a series of tests, Jami was released from the emergency department and admitted to the clinical decision unit (CDU) about 6:30 p.m. At 8:05 p.m., Knightstep was first notified of Jami's condition,

including her oxygen saturation, and an order for an arterial blood gas test was given. Knightstep was again notified at 10:00 p.m. and a venti-mask was given. At 11:30 p.m., Knightstep was notified that Jami reported breathing difficulty and that her oxygen saturation was 89%. Jami's oxygen saturation dropped to the mid-80s at 12:05 a.m. and Knightstep ordered a bi-level positive airway pressure mask. At 12:15 a.m., Jami had worsening breathing difficulty and became unresponsive. Knightstep was at her bedside and a code was called. Jami did not tolerate the mask well and Knightstep was paged at 12:25 a.m. At 12:30 a.m., Jami was calmer and Knightstep was at her bedside, but at 12:45 a.m., Jami became unresponsive and a code team arrived at 12:50 a.m. Jami passed away at 1:20 a.m.

Peacock noted that "Ms. Jeffers presented on Christmas day with what initially seemed to be a URI. However, the evaluation did not support the presence of a URI." He stated that Jami's "HR and tachypnea exceeded that which would be expected based on the documented physical exam, her lack of fever, and the lab and radiographic investigations." He further reported that "as [Jami's] condition remarkably deteriorated, no changes in management or investigation occurred. This patient arrived in the observation unit, profoundly hypoxic." He stated that the severity of Jami's illness when she arrived in the CDU "should have been an exclusion criteria for this unit"; yet despite her worsening condition, she "essentially received no additional evaluation or treatment until minutes before her death."

Peacock opined that "[b]ecause of the cardiovascular reserve present in a young patient, if a 29 year old is severely hypoxic, the radiographic findings should be remarkable." He added that "[t]he fact that this patient had relatively little chest x-ray and CT findings (per the report) should have immediately called into question the possible diagnosis." He opined this is also the case with Jami's abnormal vital signs, which are documented throughout her entire stay. He

concluded that when Jami was found to be profoundly hypoxic, with "blood gas showing 51 mmHg oxygen (despite being on 6 liters of nasal cannula oxygen), immediate transfer to an ICU should have occurred. By waiting until her cardiovascular collapse, she was insured no potential for salvage[a]bility."

Peacock's report states the standard of care applicable to physician's assistants required Knightstep to:

1.     Provide reasonable evaluation of Ms. Jeffers' presentation by directly examining and assessing her.

2.     Provide timely management of Ms. Jeffers' hypoxia by providing serial physical assessment and continued investigation orders.

He states this standard of care was breached by Knightstep's:

1.     Failure to provide reasonable evaluation. In fact, PA Knightstep failed to perform any bedside assessment/examination until 6 hours after Ms. Jeffers was admitted to the CDU.

2.     Failure to provide timely management of a profoundly hypoxic patient. PA Knightstep failed to consider that Ms. Jeffers' symptoms were inconsistent with the assigned diagnosis and she failed to perform appropriate, additional testing. Failing to physically examine a patient who was obviously suffering profound hypoxia in an observation unit constitutes a breach in the standard of care.

Moorfield (herself a physician's assistant) stated in her report that the applicable standard of care required Knightstep to provide reasonable and timely evaluation of reported changes in the patient's condition and includes direct examination and assessment. Moorfield opined that Knightstep breached the standard of care by failing to manage Jami's hypoxia by failing to perform serial physical assessments and order continued investigations. According to Moorfield, Knightstep breached the standard of care by failing "to come to the patient's bedside once notified to evaluate the patient's condition in a timely manner, despite being contacted three times over a 3 hour and 25 minutes period of time with reports of worsening patient condition."

Knightstep challenges only whether the expert reports are sufficient as to causation. Although we read both reports in context, Moorfield is not a physician, and thus is not qualified to opine on causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (expert on causation must be a physician *and* otherwise qualified to render opinions on that causal relationship under the rules of evidence). Therefore, we focus on Peacock's report with respect to causation.

Peacock's report states:

> PA Knightstep failed to timely examine Ms. Jeffers and appropriately intervene. As such, she failed to appreciate and address Ms. Jeffers' clearly deteriorating condition. As a result, Ms. Jeffers' worsening hypoxia ultimately led to profoundly inadequate oxygenation and associated cardiac arrest and death.

Knightstep argues Peacock's report addresses causation only in a conclusory manner and does not identify how her alleged breach of the standard of care resulted in Jami's death. We agree.

Peacock identified several alleged failures by Knightstep as breaches of the standard of care, but he failed to state an opinion on the causal connection between those breaches and Jami's death. Peacock does not state how Knightstep's failing to physically examine Jami caused her death or how performing appropriate additional testing would have prevented her death.

Peacock's report does not go as far as the report in *Hollingsworth* regarding the chain of command and "call for help" claims. *See Hollingsworth*, 353 S.W.3d at 522–23. In that case the report stated that had the nurses made an earlier call for help, "it is likely that Mr. Springs could have been woken up and that his hypoxic brain injury would have been avoided" and "the injury would have been avoided or certainly mitigated." *Id.* Yet even those statements were held to be conclusory because the expert did not "explain what actions would have resulted from the call for help (or initiation of the chain of command) that would have resulted in awakening Springs. Again, we are not permitted to infer how the solicitation of assistance would have remedied the

–6–

situation; the causation expert must tell us." *Id.*

As in *Hollingsworth*, Peacock does not explain what actions would have resulted from a reasonable evaluation of Jami by Knightstep or how that evaluation or physical examination would have prevented the worsening of Jami's hypoxia. Nor does he explain what "appropriate, additional testing" would have done to prevent her injury. Peacock's report fails to tie the stated breaches of the standard of care to Jami's injuries or explain how Jami would have had a better outcome but for these breaches. We cannot infer how the failure to evaluate and timely manage the patient would have prevented or lessened the injury. *See Bowie*, 79 S.W.3d at 53.

The Jefferses cite to *Ortiz v. Patterson*, 378 S.W.3d 667 (Tex. App.—Dallas 2012, no pet.), for the proposition that causation is to be considered in the context of the entire report, not by isolating on one or two sentences. We agree with that proposition, but we disagree as to whether Peacock's report here provided adequate information to support a conclusion as to causation. In *Ortiz*, the expert report stated that the doctor's failure to diagnose Ortiz with pneumonia and admit him to the hospital "contributed to the premature death of this man. If Mr. Ortiz had received appropriate evaluation and treatment it is more likely than not that he would have survived this ordeal." *Ortiz*, 378 S.W.3d at 673. We concluded the report was conclusory about causation because it merely stated the violations of the standard of care proximately caused the injury; it failed to explain how the alleged breach of the standard of care caused Ortiz's alleged injury. *Id.* at 674. We explained, that without relying on impermissible inferences, the report failed to explain how Ortiz's condition worsened from very ill to death in a short time as a result of failing to conduct certain tests and admit him to a hospital. *Id.* at 674–75. Here also, without resorting to impermissible inferences, Peacock fails to explain how Jami's condition worsened from very ill to death as a result of Knightstep's failure to examine her or the other

failures identified as breaches of the standard of care.

In *Stacks* (the appeal involving Dr. Stacks arising out of his treatment of Jami), we distinguished *Ortiz* and concluded: "Peacock thus explained in his report how the failure to properly diagnose Ms. Jeffers's condition and place her in a closely monitored care unit allowed her hypoxia to worsen to the point that there was 'no potential for salvageability' when she was finally transferred to the intensive care unit." *Stacks*, 2013 WL 1188980, at *5. However, with regard to Knightstep, Peacock does not link her alleged negligence to Jami's injuries; he does not explain how the alleged failures to examine, evaluate, appropriately intervene or appreciate and address Jami's clearly deteriorating condition proximately caused Jami's injuries. *See Fortner*, 399 S.W.3d at 379; *Hollingsworth*, 353 S.W.3d at 518–19. Peacock does not explain why a different, better result would have been achieved if Knightstep had met her standard of care. *See Hollingsworth*, 353 S.W.3d at 519. Instead, the report is conclusory in its attempts to connect Knightstep's alleged breaches of the standard of care to Jami's injury.

Moreover, Peacock's opinion about causation as to Stacks does not apply to Knightstep because Knightstep's alleged breaches of the standard of care are different from Stacks's breaches. Peacock did not state that Knightstep misdiagnosed Jami's condition or assigned her to the CDU. Thus, the opinion that Stacks's breach caused Jami's death does not support an opinion that Knightstep's breach also caused her death. *See Kettle v. Baylor Med. Ctr. at Garland*, 232 S.W.3d 832, 839 (Tex. App.—Dallas 2007, pet. denied) ("Each provider's individual treatment must also be causally linked to the damages claimed.").

We conclude the trial court abused its discretion by denying Knightstep's motion to dismiss and sustain Knightstep's issue.

We reverse the trial court's amended order on expert report challenges as to Knightstep

and remand this case for determination of whether to grant a 30-day extension to cure deficiencies in the reports and for further proceedings.

/Jim Moseley/
JIM MOSELEY
JUSTICE

121067F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEBRA KNIGHTSTEP, P.A., Appellant

No. 05-12-01067-CV          V.

MOLLIE JEFFERS AND JAMES
JEFFERS, INDIVIDUALLY AND AS
REPRESENTATIVES OF THE ESTATE
OF JAMI KAY JEFFERS, Appellees

On Appeal from the 397th Judicial District
Court, Grayson County, Texas
Trial Court Cause No. CV-11-1716.
Opinion delivered by Justice Moseley.
Justices Bridges and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the trial court's amended order on expert report challenges is **REVERSED** as to appellant DEBRA KNIGHTSTEP, P.A. and this cause is **REMANDED** to the trial court for determination of whether to grant a 30-day extension to cure deficiencies in the reports and for further proceedings.

It is **ORDERED** that appellant DEBRA KNIGHTSTEP, P.A. recover her costs of this appeal from appellees MOLLIE JEFFERS AND JAMES JEFFERS, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF JAMI KAY JEFFERS.

Judgment entered this 10th day of July, 2013.

/Jim Moseley/
JIM MOSELEY
JUSTICE