**Reversed and Rendered in part; Remand in part and Opinion Filed December 22, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00056-CV

**COLUMBIA NORTH HILLS HOSPITAL, SUBSIDIARY, L.P., INDIVIDUALLY AND A/K/A AND D/B/A NORTH HILLS HOSPITAL, Appellant**

**V.**

**TONI GAIL TUCKER, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-15031**

## MEMORANDUM OPINION

Before Justices FitzGerald, Evans, and Brown
Opinion by Justice FitzGerald

Appellant Columbia North Hills Hospital, Subsidiary, L.P. appeals the denial of its motion to dismiss made pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code. We hold that appellee Toni Gail Tucker's expert report addressing the essential element of causation is conclusory as to that element. Accordingly, we reverse the trial court's order denying appellant's motion to dismiss, render judgment dismissing appellee's claims against appellant, and remand for further proceedings as to appellant's request for attorneys' fees and costs.

## I. BACKGROUND

Appellee alleges the following facts in her live pleading. She checked into appellant's hospital with severe abdominal pain on September 11, 2009. She was discharged on September 12, but she returned that same day. She underwent surgery in the early morning hours of September 13. After the surgery, appellant was transferred to Room 511 of the hospital. Appellant's patient care plan included the notation "High Risk to Fall." On the morning of September 16, appellant used the restroom, became dizzy when she stood up after using the toilet, and fell. A nurse found her lying on the floor of the restroom. Nevertheless, appellant was discharged from the hospital later that day. The fall caused appellant to suffer multiple injuries, and she has since undergone several surgeries on her back and neck as a result of the fall.

Appellee sued several defendants, including appellant, for her alleged injuries on theories of negligence and gross negligence. She attached a report by a nurse, Katherine L. Dexter, to her original petition. The defendants, including appellant, filed objections to the Dexter report. Appellee then filed and served a report by Larry Mitchell Kjeldgaard, D.O., but she did so after the 120-day deadline prescribed in Chapter 74 had expired. Appellee also amended her pleadings to nonsuit all defendants except for appellant.

Appellant filed a motion to dismiss appellee's lawsuit pursuant to section 74.351, asserting that the Dexter report did not satisfy all of the requirements of that section and that the Kjeldgaard report was late and could not be considered for any purpose. Appellee responded to the motion to dismiss and alternatively requested an extension of time to file a supplemental expert report. After a hearing, the trial judge signed an order sustaining appellant's objections to the Dexter report, denying appellant's motion to dismiss, and granting appellee thirty days to file

an expert report in compliance with Chapter 74.  Appellee filed an amended pleading during that thirty-day window, and she attached the Dexter report and the Kjeldgaard report to that pleading.

Appellant then filed objections to the Kjeldgaard report and a second motion to dismiss. Appellee filed a response.  After a hearing, the trial judge signed an order denying appellant's second motion to dismiss.  Appellant timely filed its notice of accelerated appeal.[1]

## II. ANALYSIS

In a single issue on appeal, appellant argues that the trial judge abused his discretion by denying appellant's second motion to dismiss.  Appellant presents three arguments in support of its issue, all centering on the question of whether the Kjeldgaard report adequately addressed the element of causation.  We need discuss only appellant's argument that Kjeldgaard's causation opinion is insufficient because it is conclusory.

### A. Applicable law

Within 120 days after filing the original petition, a claimant pursuing health care liability claims must serve on each party one or more expert reports for each physician or health-care provider against whom such a claim is asserted.[2]  The expert reports must provide a fair summary of the expert's opinions regarding the applicable standards of care, the manner in which the particular physician or health-care provider failed to meet the standards of care, and the causal relationship between that failure and the injury, harm, or damages claimed.[3]  If a defendant's liability is purely vicarious, a report that adequately implicates the actions of the defendant's agents or employees is sufficient.[4]  With respect to the element of causation, the expert must be "a physician who is otherwise qualified to render opinions on such causal

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2014).

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2014).

[3] *See id.* § 74.351(r)(6).

[4] *Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.).

relationship under the Texas Rules of Evidence."[5] If the claimant fails to serve an expert report as to a defendant physician or health-care provider within the deadline, the defendant is entitled to dismissal of the claim with prejudice and an award of attorneys' fees.[6] The trial judge can grant one thirty-day extension of time to a claimant who seeks to cure a timely but defective report.[7]

If the defendant challenges the adequacy of a report, the trial court shall grant the motion only if the report does not represent a good-faith effort to comply with the definition of "expert report" found in the statute.[8] In applying the good-faith-effort test, courts are limited to the four corners of the report.[9] To be a good-faith effort, the report must provide enough information to fulfill two purposes: (1) to inform the defendant of the specific conduct the claimant has called into question and (2) to provide a basis for the trial judge to conclude that the claims have merit.[10]

A report is deficient if it states only the expert's conclusions about the standard of care, breach, and causation.[11] That is, the expert must explain the basis of his statements to link his or her conclusions to the facts.[12] The expert must "explain, to a reasonable degree, how and why the breach [of the standard of care] caused the injury based on the facts presented."[13] We may not "fill gaps" in an expert report by drawing inferences or guessing what the expert likely meant

---

[5] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C).

[6] See id. § 74.351(b); Sanchez v. Martin, 378 S.W.3d 581, 588 (Tex. App.—Dallas 2012, no pet.).

[7] See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

[8] See id. § 74.351(l).

[9] Sanchez, 378 S.W.3d at 588.

[10] Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam).

[11] Ortiz, 378 S.W.3d at 671; see also Jelinek v. Casas, 328 S.W.3d 526, 539 (Tex. 2010) (stating that conclusory reports do not fulfill the two purposes of the good-faith-effort test).

[12] Bowie Mem'l Hosp., 79 S.W.3d at 52.

[13] Jelinek, 328 S.W.3d at 539–40.

–4–

or intended.[14]  We review a causation opinion in the context of the entire report when assessing its sufficiency.[15]

Our standard of review is abuse of discretion.[16]  A trial judge has no discretion in determining what the law is or in applying the law to the facts.[17]  A trial judge's clear failure to analyze or apply the law correctly constitutes an abuse of discretion.[18]

## B.    Application of the law to the facts

Because Dexter is not a physician, we focus on Kjeldgaard's report with respect to causation.[19]  In a one-paragraph section under the heading "CAUSATION," Kjeldgaard opines as follows:

> It is my opinion based on a reasonable medical probability, and after reviewing the medical records from Ms. Tucker's healthcare providers and physicians, that the above braches [sic] in this standard of care by the hospital nursing personnel identified herein resulted in the significant injuries she sustained to her left shoulder, neck and head.  Had it not been for the failures outline [sic] above, Ms. Tucker would not have required the multiple surgical procedures and the prolonged medical care and treatment for these injuries.

Standing alone, this causation opinion is conclusory.  It is much like the opinion we held was conclusory in the *Ortiz* case.  In that case, the patient sought treatment for respiratory complaints at a medical facility and died the next day.[20]  In the subsequent malpractice lawsuit, the claimants relied on an expert report that recited, in pertinent part:

> Failing to do the appropriate tests, make the correct diagnosis, and recognize the clinical severity and risks involved in not referring Mr. Ortiz for admission to a hospital did not meet the standard of care, and contributed to the premature death

---

[14] *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.).

[15] *Ortiz*, 378 S.W.3d at 671.

[16] *Sanchez*, 378 S.W.3d at 587.

[17] *Id.*

[18] *Id.*

[19] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C); *Knightstep v. Jeffers*, No. 05-12-01067-CV, 2013 WL 3487933, at *3 (Tex. App.—Dallas July 10, 2013, no pet.) (mem. op.).

[20] *Ortiz*, 378 S.W.3d at 670.

of this man.  If Mr. Ortiz had received appropriate evaluation and treatment it is more likely than not that he would have survived this ordeal.[21]

We concluded that the expert failed to explain how Ortiz's death resulted from the breaches of the standard of care identified in the report, and accordingly the trial judge properly granted the defendants' motion to dismiss.[22]

The question, then, is whether the remainder of Kjeldgaard's report supplies the missing "how and why" of causation.[23]  In the introductory section of his report, Kjeldgaard generally describes the factual and legal materials he reviewed, as well as the scope of the task he was asked to perform.  After saying that he reviewed appellee's medical records and that he has personally examined and treated appellee, Kjeldgaard states, "I . . . have determined that there were significant deviations, breaches and omissions from the acceptable standards of care for nurses which caused multiple permanent and serious injuries to Ms. Tucker's left shoulder, neck and head."  Nothing else in the introductory section of the report fleshes out this statement or explains the basis for Kjeldgaard's conclusions about causation.  Thus, the introduction does not render Kjeldgaard's causation opinion sufficient.

Next, Kjeldgaard recites his qualifications, which have no bearing on the causation question before us.  Then Kjeldgaard recites the factual background of the case.  This recitation focuses on the period of time before appellee's surgery, the procedures performed during the surgery, and appellee's transfer to a room in appellant's hospital.  In this section of his report, Kjeldgaard also remarks in passing, "While under the care of North Hills Hospital, Ms. Tucker sustained injury to her head, neck, and left shoulder when she became dizzy and fell on the bathroom floor in her hospital room."  But the factual-background section of the report does not

---

[21] *Id*. at 673 (emphasis omitted).

[22] *Id*. at 675.

[23] *See Jelinek*, 328 S.W.3d at 539–40.

otherwise address causation or provide any explanation for Kjeldgaard's ultimate opinion about causation. Accordingly, the factual-background section of the report does not render Kjeldgaard's causation opinion nonconclusory.

Next in Kjeldgaard's report is a section entitled "THE FALL INCIDENT." The following excerpts are the parts of that section germane to our analysis:

> Ms. Tucker has [sic] been given Lovenox, a blood thinner for 3 days prior to her fall. Based on a reasonable medical probability, a contributing factor to Ms. Tucker's foreseeable fall was her low blood pressure during the night before the incident and on the day of the fall, which ranged from 80/40, with the high of [sic] day just after the fall of 112/70. Moreover, her low potassium level during the night before the incident and on the day of the fall, also likely was a contributing factor to Ms. Tucker' [sic] fall.
>
> . . .
>
> On the date in question, Mr. [sic] Tucker was on a cardiac telemetry strip. [footnote omitted] There is no date or time of telemetry strips in the chart (North Hills Hospital –MRA-00016) on the day of the fall from midnight to the time Nurse Novak recorded the fall at 11:45 am. This is highly speculative since one of their duties, as a registered nurse, is to measure all strips and record the date and time as in the bottom one (North Hills Hospital-MRA-00014). There were no strips printed off when Ms. Tucker fell and the incident should have triggered the monitor to make a strip. The CNA who was assigned to work the area of [room] 511 did not reflect anything in the medical chart unordinary at the time of Ms. Tucker's fall.
>
> . . .
>
> Based on my review of these records, it is my opinion, based on a reasonable degree of medical probability that the nursing care received by Ms. Tucker fell below the standard of care required. My review of the records have [sic] found conclusive evidence that there were in fact significant deviations and breached [sic] of the standards of nursing care on September 15, 2009 until Ms. Tucker's discharge on September 16, 2009.

Immediately following the last-quoted paragraph is a section called "STANDARDS OF CARE," in which Kjeldgaard states the following:

> The standard of care crosses many different healthcare practice areas. For example, institutes [sic] acceptable fall precautions for hospital patients crosses almost all nursing and physician specialist area [sic]. Monitoring a patient for safety and responding timely with appropriate medical treatment in the event of

an incident/injury is an aspect of medicine that crosses almost every specialty area.

While Federal and State Regulatory Board Standards of Care (SOC) and Scope of Practice (SOP) may differ slightly, individuals associated with the Medical Profession have (2) two principal duties to the patient in their care:

- The obligation to provide a safe environment; and
- To provide reasonable and prudent care.

Which was designed to prevent injuries such as the injuries Ms. Tucker sustained at North Hills Hospital.

In an acute hospital setting, an integrated multidisciplinary team plans care for patients such as Toni Tucker who are at risk, hinged on findings from an individualized assessment (ECRI, 2006 Joint Commission on Accreditation of Healthcare Organizations (JCAHO)[)]. The process approach an individualized patient fall assessment ("PFA") includes use of standardized measurement tools of patient risk in combination with a fall-focused history and physical examination, functional assessment, and review of medications.

After that, the report concludes with the single-paragraph section about causation quoted at the beginning of our analysis above.

We conclude that the remainder of Kjeldgaard's report does not contain the factual explanation of the causal connection between appellant's negligence and appellee's injuries that is legally required to make his causation opinion nonconclusory. He identifies two physical conditions as "contributing factors" to appellee's fall—appellee's low blood pressure and her low potassium. In her brief, appellee also references the paragraph about the cardiac telemetry strip, but we see nothing in Kjeldgaard's report to suggest that the use or nonuse of cardiac telemetry had any causal connection with appellee's fall. So the question becomes whether Kjeldgaard explains (1) how and why appellee's low blood pressure and low potassium were

caused by breaches of the standard of care by appellant's nursing staff[24] and (2) how and why these conditions caused appellee to fall and suffer injuries.[25]

In our decision in *Hollingsworth v. Springs*, we rejected an expert report that was, if anything, more detailed on the subject of causation than Kjeldgaard's is. In *Hollingsworth*, the patient suffered catastrophic injuries during surgery.[26] In the subsequent professional negligence suit against the hospital administrators, the claimant relied on an expert report that contained the following passage about causation:

> [H]ad the nursing staff been appropriately supervised and had the policies and procedures been followed, then as I set forth above, the injuries would have been avoided…. It is my opinion that the administrative negligence identified by Mr. Brosseau with regard to the failure to ensure nursing competence, the failure to enforce the hospital's policies and procedures, and the failure to ensure communication among the health care providers were proximate causes of Mr. Springs' injuries. Had the nurses been competent and adequately assessed Mr. Springs, understood the significance of the assessment and communicated it to the other healthcare providers, the hypoxic brain injury would have been avoided. Further, had the policies and procedures in place been followed, the nursing staff or administration would not have allowed anesthesia to begin without a member of the surgical team being present. Thus the nursing negligence set forth in Nurse Rosenthal's report and the administrative negligence set forth in Mr. Brosseau's report were proximate causes of injury to Mr. Springs.[27]

We held that the report did not adequately explain why the patient's result would have been better if the administrative personnel had acted differently.[28] As a specific example, we noted that the expert did not explain why the patient's outcome would have been better if the anesthesia had not been started until a member of the surgical team was present.[29] In the instant

---

[24] We do not decide whether Kjeldgaard or Dexter sufficiently stated that either conduct breached an applicable standard of care or identified what that standard of care is. We focus our opinion on the sufficiency of Kjeldgaard's statement of causation.

[25] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (requiring the expert report to address the causal relationship between the failure to meet the standard of care and the "injury, harm, or damages claimed").

[26] 353 S.W.3d at 512.

[27] *Id*. at 518.

[28] *Id*. at 519.

[29] *Id*.

case, Kjeldgaard does not even identify any breaches of the standard of care by the appellant's nursing staff, much less explain why avoidance of those breaches would have prevented appellee's injuries. *Hollingsworth* dictates the conclusion that Kjeldgaard's causation opinion is inadequate. Other cases from this Court and other courts of appeals further support our holding.[30]

Appellee argues that her expert is not required to rule out all other possible causes of a claimant's injuries, citing our decision in *Baylor Medical Center at Waxahachie v. Wallace*.[31] Although appellee accurately states the law, that proposition does not aid her case. The Kjeldgaard report is not deficient because Kjeldgaard fails to rule out other possible causes of appellee's injuries. It is deficient because Kjeldgaard does not explain how or why anything appellant's nurses did or failed to do caused appellee's injuries.

Finally, appellee argues that we should read Kjeldgaard's report together with Nurse Dexter's report in assessing the sufficiency of the reports. This is also correct as a statement of law.[32] But this rule does not aid appellee's cause. Because Dexter is not a physician, she cannot supply the necessary causation opinion.[33] Although Dexter provides some opinions regarding the standards of care applicable to appellant's nurses and the manner in which those standards were breached, her opinions on these subjects do not and cannot change the fact that Kjeldgaard supplies nothing but bare conclusions on the essential element of causation. And although Dexter criticizes the nurses' administration of potassium to appellee on the day of the fall, Kjeldgaard never refers to Dexter's report in any way, states that such conduct breached the

---

[30] *See, e.g.*, *Kocurek v. Colby*, No. 03-13-00057-CV, 2014 WL 4179454, at *3–5 (Tex. App.—Austin Aug. 22, 2014, no pet.) (mem. op.); *Knightstep*, 2013 WL 3487933, at *3–4.

[31] 278 S.W.3d 552, 562 (Tex. App.—Dallas 2009, no pet.).

[32] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i).

[33] *See id*. § 74.351(r)(5)(C).

–10–

applicable standard of care, links such conduct to another report's statement that such conduct violated the standard of care, or states that there was a causal relationship between appellee's low potassium and anything the nurses did or failed to do.

## C.    Conclusion

We conclude that appellee failed to furnish an adequate expert report on the essential element of causation and that the trial judge abused his discretion by denying appellant's second motion to dismiss.  Because the trial judge has already granted appellee one extension of time to cure defects in her expert reports, no further extension is available.[34]  Accordingly, we must dismiss appellee's claims.

## III.    DISPOSITION

For the foregoing reasons, we reverse the trial court's order denying appellant's second motion to dismiss, and we render judgment dismissing appellee's claims against appellant with prejudice.  We remand for a determination of the amount of attorneys' fees and costs to be awarded to appellant.[35]

140056F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

---

[34] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *see also Sanchez*, 378 S.W.3d at 594–95 (holding that an additional extension of time is potentially available if prior extension of time was not based on insufficiency of expert reports).

[35] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1).



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

COLUMBIA NORTH HILLS HOSPITAL, SUBSIDIARY, L.P., INDIVIDUALLY AND A/K/A AND D/B/A NORTH HILLS HOSPITAL, Appellant

No. 05-14-00056-CV     V.

TONI GAIL TUCKER, Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-11-15031.
Opinion delivered by Justice FitzGerald. Justices Evans and Brown participating.

In accordance with this Court's opinion of this date, the December 23, 2013 order of the trial court is **REVERSED** and judgment is **RENDERED DISMISSING** appellee Toni Gail Tucker's claims with prejudice to their refiling. This case is **REMANDED** solely for a determination of reasonable attorney's fees and costs of court incurred by appellant Columbia North Hills Hospital, Subsidiary, L.P., Individually and A/K/A and D/B/A North Hills Hospital.

It is **ORDERED** that appellant Columbia North Hills Hospital, Subsidiary, L.P., Individually and A/K/A and D/B/A North Hills Hospital recover its costs of this appeal from appellee Toni Gail Tucker.

Judgment entered December 22, 2014.