ACCEPTED
01-05-00793-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/10/2015 3:30:30 PM
CHRISTOPHER PRINE
CLERK

**01-15-00793-CV**

In the Court of Appeals
For the First District of Texas at Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/10/2015 3:30:30 PM
CHRISTOPHER A. PRINE
Clerk

**Nexion Health at Beechnut, Inc. d/b/a Beechnut Manor,**
*Appellant*,

**v.**

**Maria Moreno, Individually and as Representative of
the Estate of Mario Moreno,**
*Appellee*.

On Appeal from the
133rd Judicial District Court of Harris County, Texas
Cause Number: 2015-01975
The Honorable Jaclanel McFarland, Presiding Judge

### APPELLANT'S BRIEF

*Attorneys for Appellant*

**MACDONALD DEVIN, PC**
3800 Renaissance Tower
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile

ORAL ARGUMENT REQUESTED

**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@MacdonaldDevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@MacdonaldDevin.com

## IDENTITY OF PARTIES AND COUNSEL

**Defendant/Appellant**

Nexion Health at Beechnut, Inc. d/b/a Beechnut Manor

**Counsel for Defendant/Appellant**

Gregory N. Ziegler
Texas Bar No. 00791985
Weston M. Davis
Texas Bar No. 24065126
MACDONALD DEVIN, PC
1201 Elm Street
3800 Renaissance Tower
Dallas, Texas  75270
214.744.3300   Telephone
214.747.0942   Facsimile

**Counsel for Plaintiff/Appellee**

Maria Moreno, Individually and as Representative of the Estate of Mario Moreno, *represented by*
Jason A. Gibson
THE GIBSON LAW FIRM
440 Louisiana, Suite 2400
Houston, Texas  77002
713.650.1010 Telephone
713.650.1011  Facsimile

i

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.1, Appellant requests oral argument in this case. This case presents an issue regarding the expert report requirement of Civil Practice and Remedies Code Chapter 74, which is a developing area of the law. For this reason, Appellant respectfully submits that argument would significantly aid the Court in determining the legal and factual issues presented in this appeal.[1]

---

[1] *See* TEX. R. APP. P. 39.8.

# TABLE OF CONTENTS

**Identity of Parties and Counsel** ................................................................. i

**Statement on Oral Argument** .................................................................. ii

**Table of Contents** ................................................................................. iii

**Index of Authorities** ............................................................................. v

**Statement of the Case** ........................................................................... 2

**Statement of Jurisdiction** ....................................................................... 3

**Issues Presented** ................................................................................. 3

**Statement of Facts** ............................................................................... 4

**Summary of the Argument** ..................................................................... 5

**Argument** ........................................................................................... 6

    **I.**    **Standard of Review** ............................................................... 6

    **II.**   **First Issue:** Trial court abused its discretion in denying Appellant's motion to dismiss because Dr. Marks' report does not sufficiently identify causation. ............ 7

    **III.**  **Second issue:** Trial court abused its discretion in denying Appellant's motion to dismiss because Dr. Marks' report and CV do not evidence adequate qualifications ............................................................. 9

    **IV.**  **Third Issue:** The trial court abused its discretion in failing to dismiss Appellee's claims. ..................................... 10

**Prayer** ............................................................................................... 11

**Certificate of Service** ........................................................................... 12

**Certificate of Compliance** ................................................................. 13

**Appendix Contents** ........................................................................ 13

# INDEX OF AUTHORITIES

## Cases

*Baker v. Gomez,*
    276 S.W.3d 1, 8 (Tex. App.–El Paso 2008, pet. denied) ................... 6

*Bowie Memorial Hosp. v. Wright,*
    79 S.W.3d 48, 53 (Tex. 2002) ...................................................... 6, 9

*Buck v. Blum,*
    130 S.W.3d 285 (Tex. App.–Houston [14th Dist.] 2004, no pet.) ..... 6

*Cayton v. Moore,*
    224 S.W.3d 440 (Tex. App.–Dallas 2007, no pet.). ......................... 10

*Columbia N. Hills Hosp. Subsidiary, L.P. v. Tucker,*
    No. 05-14-00056-CV, 2014 Tex. App. LEXIS 13685   (Tex. App.—
    Dallas Dec. 22, 2014, no pet.) ..................................................... 7, 8

*Fortner v. Hosp. of the Sw., LLP,*
    399 S.W.3d 373 (Tex. App.—Dallas 2013, no pet.) ........................... 9

*Foster v. Zavala,*
    214 S.W.3d 106 (Tex. App.—Eastland 2006, pet. denied) ................. 11

*Hollingsworth v. Springs,*
    353 S.W.3d 506 (Tex. App.–Dallas 2011, no pet.) ........................ 6, 10

*Jones v. Ark-La-Tex Visiting Nurses, Inc.,*
    128 S.W.3d 393 (Tex. App.—Texarkana 2004, no pet.).................... 10

*Ortiz v. Patterson,*
    378 S.W.3d 667 (Tex. App.—Dallas 2012, no pet.) ........................... 7

*Rittmer v. Garza,*
    65 S.W.3d 718 (Tex. App.–Houston [14th Dist.] 2001, no pet.) ........ 6

*Simonson v. Keppard,*
    225 S.W.3d 868 (Tex. App.–Dallas, 2007, no pet.). ........................ 10

*Windsor v. Maxwell,*
    121 S.W.3d 42 (Tex. App.–Fort Worth 2003, pet. denied) .................. 6

**Statutes**

Tex. Civ. Prac. & Rem. Code § 51.014(a)(9) ............................................. 3, 6

Tex. Civ. Prac. & Rem. Code § 74.351 ............................................. 1, 3, 9, 13

Tex. Civ. Prac. & Rem. Code § 74.402 ...................................................... 9

**Rules**

TEX. R. APP. P. 39.1 .................................................................................. ii

TEX. R. APP. P. 39.8 .................................................................................. ii

TEX. R. APP. P. 9.4 .................................................................................. 13

**01-15-00793-CV**

In the Court of Appeals
For the First District of Texas at Houston

---

**Nexion Health at Beechnut, Inc. d/b/a Beechnut Manor,**
*Appellant*,

**v.**

**Maria Moreno, Individually and as Representative of
the Estate of Mario Moreno,**
*Appellee.*

---

On Appeal from the
133rd Judicial District Court of Harris County, Texas
Cause Number: 2015-01975
The Honorable Jaclanel McFarland, Presiding Judge

---

TO THE HONORABLE COURT OF APPEALS:

Appellant Nexion Health at Beechnut, Inc. d/b/a Beechnut Manor complains of the trial court's Order denying its motion to dismiss Appellee's lawsuit for failure to serve an expert report that complied with Texas Civil Practice and Remedies Code Chapter 74.351, and shows:

1

## STATEMENT OF THE CASE

This is an interlocutory appeal from a health care liability claim filed under the Texas Medical Liability Act. Mario Moreno was a resident at Beechnut Manor ("Beechnut") between April and May 2013, and passed away on May 30, 2013. CR:22. In January 2015, Maria Moreno ("Plaintiff" or "Appellee"), the underlying plaintiff, filed suit against Beechnut, alleging claims for medical negligence stemming from Mr. Moreno's residency at the Beechnut facility in 2013. CR:20-26.

On February 23, 2015, Appellee served Beechnut with the purported expert reports and CVs of (1) Dr. Donald H. Marks ("Dr. Marks") and (2) Nurse Rhonda Rotterman ("Nurse Rotterman"). CR:27-63. On June 29, 2015, Beechnut filed objections to both reports and a Motion to Dismiss the complaint based on deficiencies in the reports. CR:6-19. Appellee filed a response to the motion to dismiss on August 21, 2015. CR:81-88. The trial court heard Beechnut's Motion to Dismiss on August 24, 2015 and signed an order denying the motion. CR:143. On September 14, 2015, Beechnut timely filed its Notice of Accelerated Appeal.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this accelerated appeal pursuant to Texas Civil Practice and Remedies Code section 51.014(a)(9), because Beechnut seeks interlocutory relief from an order denying the relief sought by a dismissal motion under Section 74.351(b).

## ISSUES PRESENTED

### FIRST ISSUE

*Did the trial court abuse its discretion when it denied Appellant's motion to dismiss because Dr. Marks' report fails to establish the causal relationship between the alleged harm and Beechnut's conduct?*

### SECOND ISSUE

*Did the trial court abuse its discretion when it denied Appellant's motion to dismiss because Dr. Marks' report and CV show that he lacks the requisite qualifications?*

### THIRD ISSUE

*Did the trial court abuse its discretion when it failed to dismiss Appellee's claims?*

## STATEMENT OF FACTS

Appellee's complaint alleges that Beechnut breached its duties and was negligent in "one or more of the following ways:

     a.    Failing to exercise ordinary care while treating a patient;

     b.    Failing to adequately diagnose and treat a patient;

     c.    Failing to provide adequate supervision to a patient;

     d.    Failing to provide adequate supervision when the patient returned to the facility;

     e.    Failing to act as a reasonable and prudent medical care facility would under the same or similar circumstances; and

     f.    Failing to adequately assess medical condition."

CR:23. Appellee alleges that "Defendant's acts and omissions were a proximate cause of Plaintiff's injuries." *Id.*

Dr. Marks' report states that Mr. Moreno fell outside of the Beechnut facility on May 23, 2013 and was found lying in the hallway of the Beechnut facility on May 29, 2013. CR:41. Dr. Marks states that Mr. Moreno's death certificate indicates that he died of "blunt head trauma" on May 30, 2013. *Id.* Dr. Marks incorporates Nurse Rotterman's opinion on the applicable standard of care and states that "based on reasonable medical probability, bruises, lacerations, blunt head trauma and death are all reasonably foreseeable injuries when a cognitively

4

impaired patient prescribed six different mind altering medications is improperly supervised and falls repeatedly." *Id.* Dr. Marks' opinion on causation consists of the following:

> Mr. Moreno was prescribed and administered six different antipsychotic medications, was improperly supervised and fell on his head on two separate occasions, the latter of which directly preceded his death."

*Id.*

Beechnut objected to both reports report and moved to dismiss Appellee's complaint because Dr. Marks failed to causally link Beechnut's alleged conduct to the injuries that led to Mr. Moreno's falls or death. CR:15-17. Beechnut also objected that neither Dr. Marks' nor Nurse Rotterman's reports evidenced sufficient qualifications to opine on the standards of care and causation issues in this case. CR:9-12. The trial court denied Beechnut's motion on August 24, 2015 and this appeal followed. CR:143.

## SUMMARY OF THE ARGUMENT

The trial court abused its discretion because Dr. Marks' report failed to causally link Beechnut's alleged negligence to Mr. Moreno's falls or death. Additionally, neither Dr. Marks' report nor his CV shows that he is qualified to provide opinions concerning the alleged negligent activity in this case.

5

## <u>ARGUMENT</u>

## I.      <u>Standard of Review</u>

An abuse of discretion standard of review is applicable to this case. *Hollingsworth v. Springs,* 353 S.W.3d 506, 512 (Tex. App.–Dallas 2011, no pet.). An abuse of discretion occurs when a trial court acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *Rittmer v. Garza*, 65 S.W.3d 718, 721-22 (Tex. App.–Houston [14th Dist.] 2001, no pet.). To the extent resolution of the issue before the trial court requires interpretation of a statute, a *de novo* standard is applicable. *Id*. at 722; *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

When reviewing the sufficiency of an expert report in a health care liability case, this Court is confined to the four corners of the expert's report. *Baker v. Gomez*, 276 S.W.3d 1, 8 (Tex. App.–El Paso 2008, pet. denied). This Court may not draw inferences to supply necessary information missing from the expert's report, nor construe a report in Appellee's favor. *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002); *Windsor v. Maxwell*, 121 S.W.3d 42, 50 (Tex. App.–Fort Worth 2003, pet. denied).

**II. First Issue: Trial court abused its discretion in denying Appellant's motion to dismiss because Dr. Marks' report does not sufficiently identify causation.**

To adequately address causation, an expert report under Chapter 74 must "explain, to a reasonable degree, how and why the breach [of the standard of care] caused the injury based on the facts presented." *Columbia N. Hills Hosp. Subsidiary, L.P. v. Tucker*, No. 05-14-00056-CV, 2014 Tex. App. LEXIS 13685, *5-6 (Tex. App.—Dallas Dec. 22, 2014, no pet.) (citing *Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.). The Court "may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Id*. at *6 (citation omitted).

A Chapter 74 expert report may not simply identify a breach and imprecisely state that the breach caused an injury. ***The report must explain the causal connection between the breach and the injury***. That causal connection is missing in this case.

Dr. Marks' report states that upon admission, Beechnut staff observed that Mr. Moreno "suffered from an impaired level of consciousness, impaired balance, schizophrenia, seizures and a tendency to wander" and that a physician's examination shortly after his admission "indicated Moreno required long term residential nursing home care and close supervision and assistance." CR:40. Dr.

7

Marks' report notes that Mr. Moreno was prescribed six "mind altering medications" by the physician. CR:40-41.

Dr. Marks refers to Nurse Rotterman's report and states:

> Causation in this case is extremely straightforward. Mario Moreno was prescribed and administered six different antipsychotic medications, was improperly supervised and fell on his head on two separate occasions, the latter of which directly preceded his death.

CR:41. Dr. Marks concludes "that Beechnut Manor and its staff were negligent in the care and supervision of Moreno" which was "the proximate cause of Mario Moreno's fall and subsequent death caused by blunt force trauma Moreno suffered during that fall." *Id*.

Dr. Marks' report does not contain any factual explanation of the causal connection between Beechnut's alleged failure to supervise Mr. Moreno and Mr. Moreno's falls on May 23 and May 29. Instead, he simply states that Mr. Moreno was "improperly supervised." CR:41. This statement is conclusory and is legally insufficient to satisfy the Chapter 74 causation requirement. *See Columbia N. Hills*, 2014 Tex. App. LEXIS 13685, *12-13. Chapter 74 required Dr. Marks to explain how and why there would be a different result if Beechnut complied with the standard of care. *Id*. at *14-15. Although the court may read Nurse Rotterman's report in conjunction with Dr. Marks', Nurse Rotterman cannot

provide a causation opinion because she is not a physician and cannot cure Dr. Marks' conclusory causation statements. *Id*. at \*15-16.

The expert report must contain sufficiently specific information to demonstrate causation beyond conjecture—the mere provision of some insight into the plaintiff's claims does not address causation adequately. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 379 (Tex. App.—Dallas 2013, no pet.). Dr. Marks was required to explain how the alleged negligence of Beechnut caused the conditions that led to Mr. Moreno's death. Because Dr. Marks' report did not do that, it failed to adequately address causation and the trial court erred in failing to dismiss Appellee's complaint.

## III. Second Issue: Trial court abused its discretion in denying Appellant's motion to dismiss because Dr. Marks' report and CV do not evidence adequate qualifications.

Dr. Marks' report and C.V. failed to satisfy the expert qualification requirements of Chapter 74 because (1) he is not actively practicing health care in a nursing home—Beechnut's healthcare field, and (2) he has no training or experience working in a nursing home or supervising nurses. Tex. Civ. Prac. & Rem. Code §§ 74.351(r)(5)(B) and 74.402. Chapter 74 requires that the expert be actively practicing health care in the "same field as the defendant health care provider." Tex. Civ. Prac. & Rem. Code § 74.402(a)(2). When assessing the qualifications of a purported expert under Chapter 74, the trial court "may not draw

any inferences" and "must rely exclusively on the information contained within the four corners of the report." *Cayton v. Moore*, 224 S.W.3d 440, 445 (Tex. App.–Dallas 2007, no pet.).

In this case neither Dr. Marks' report nor his CV shows that he has any qualification or experience in a nursing home setting or supervising a nursing staff. Indeed, Dr. Marks' report describes the "reasonable standard of care ***required of a hospital*** when treating patients similar to Mario Moreno." CR:41 (emphasis added). The absence of any qualification relating to nursing supervision or nursing homes precludes the report from satisfying the requisites of Chapter 74. *Simonson v. Keppard,* 225 S.W.3d 868, 873 (Tex. App.–Dallas, 2007, no pet.); *Jones v. Ark-La-Tex Visiting Nurses, Inc.,* 128 S.W.3d 393, 397 (Tex. App.—Texarkana 2004, no pet.). Accordingly, the trial court abused its discretion in denying Appellant's motion to dismiss.

## IV. <u>Third issue: The trial court abused its discretion in failing to dismiss Appellee's claims.</u>

Dr. Marks' report omits necessary causation information and does not reflect any qualifications to provide an expert opinion in this case. While the statute allows for a discretionary 30 day period to cure deficiencies where a deficient report is timely served, "[a] court may not provide opportunities to cure, however, when an expert report is 'absent' as opposed to deficient," such as when a report "fails to address all required elements of a claim." *Hollingsworth*, 353 S.W.3d at

524 (denying a health care liability claimant an opportunity to cure when the expert report "omitted any discussion of the element of causation," so the "report could not qualify as a good faith effort to meet Chapter 74's requirements"). Beechnut asks that this Court deny any opportunity to cure and require dismissal based on Dr. Marks' lack of adequate qualifications. *See e.g., Foster v. Zavala*, 214 S.W.3d 106, 116 (Tex. App.—Eastland 2006, pet. denied) (An expert report by a person not qualified to testify does not represent a good-faith effort to comply with the definition of an expert report.). Alternatively, Beechnut requests that this Court remand the case to the trial court to determine whether to dismiss or grant Appellee an opportunity to cure.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant Nexion Health at Beechnut, Inc. d/b/a Beechnut Manor prays: that this Court reverse the trial court's August 24, 2015 Order denying Appellant's dismissal motion; that this Court render judgment holding Appellant is entitled to dismissal of Appellee's claims with prejudice, and that this Court remand to the trial court to award Appellant its attorney's fees and costs in the trial court and in this Court; and for general relief.

Respectfully submitted,

**MACDONALD DEVIN, PC**

By: \_\_\_/s/ Weston M. Davis_____
     **Gregory N. Ziegler**
     Texas Bar No. 00791985
     GZiegler@MacdonaldDevin.com
     **Weston M. Davis**
     Texas Bar No. 24065126
     WDavis@MacdonaldDevin.com

1201 Elm Street
3800 Renaissance Tower
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile

**Attorneys for Appellant**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing Appellant's Brief was served on all counsel of record in accordance with the Texas Rules of Appellate Procedure via e-Filing, on November 10, 2015.

    /s/ Weston M. Davis_____
    **Weston M. Davis**

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4, I hereby certify that this petition contains 2,938 words, *including* those not required to be counted in the word limits. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying upon the word count provided by the software used to prepare the document.

_/s/ Weston M. Davis_
**Weston M. Davis**

## APPENDIX CONTENTS

**A.**   CR 143, *Order* denying Appellant's Motion to Dismiss, signed August 24, 2015

**B.**   CR 27-34; 40-42, *Expert Report* and C.V. of Dr. Donald H. Marks

**C.**   Texas Civil Practice and Remedies Code § 74.351

Chris Daniel - District Clerk
Harris County
Envelope No: 6909288
By: WASHINGTON, PHYLLIS
Filed: 9/14/2015 1:13:17 PM

Cause No 2015-01975-133

| | | |
|---|---|---|
| MARIO MORENO, Individually and as Representative of the ESTATE OF MARIO MORENO | § § § § § § | IN THE DISTRICT COURT OF |
| v | § § § | HARRIS COUNTY, TEXAS |
| NEXION HEALTH AT BEECHNUT, INC , d/b/a BEECHNUT MANOR | § § | 133rd JUDICIAL DISTRICT |

**ORDER DENYING DEFENDANT NEXION AT BEECHNUT, INC D/B/A BEECHNUT MANOR'S CHAPTER 74 MOTION TO DISMISS**

The Court heard Defendant's Chapter 74 Motion to Dismiss  After reviewing the

pleadings, the evidence and arguments by counsel, if any, the Court *DENIES* Defendant's

Chapter 74 Motion to Dismiss

SIGNED ON _August 24_ , 2015

HON  JACLANEL MCFARLAND

Exhibit A

143

# DONALD HARVEY MARKS, M.D., Ph.D.   CURRICULUM VITAE

MAILING ADDRESS: 8215 Polk Drive, Wharton, NJ 07885.
BIRTHDATE: 27 June 1949
BIRTHPLACE: Buffalo, New York
CITIZENSHIP: United States of America

Office: 1-973-307-0364   FAX: 1-888-724-0953
e-mail: Extant4@Hotmail.com

**Clinical Practice of Medicine**
Apogee Physicians. October 2012 – present, Hospitalist.

St. Vincent's Medical Center East and Nolan Hospital, Trussville, AL. 08/13/2012 – 1/31/2014, courtest privledges as Hospitalist.

Cooper Green Mercy Hospital, Birmingham, AL, March 2004 to October 2012.
   Director, Hepatitis Clinic;
   Attending, Family Medicine Inpatient Service

Brookwood Medical Center, Birmingham, AL, Non-admit Staff 2004 to 2013, Hospitalist active admit staff 2013-present.

UAB, Clinical Assistant Professor, Division of General Internal Medicine, Department of Medicine. September 2007 to present.

Trace Crossings Medical Clinic, Hoover, AL, January 2002 to March 2006. General medicine, coverage.

Dover Community Clinic, NJ, January 1992 thru January 1999, General medicine.

Dotoli Medical Group, Nutley, NJ  January 1989 thru February 1991. General medicine and hospital coverage.

Private Practice, Internal Medicine July 1987 to December 1988.

Medical Staff, Letterman Army Hospital, June 1984 thru May 1987.

Internship and Residency July 1980 thru May 1983, USAF Medical Center, Keesler Air Force Base, MS.

**PHARMACEUTICAL INDUSTRY EXPERIENCE**
1) Southern Clinical & Regulatory, LLC, February 1997 thru July 2006.
2) Vaxin, Inc. Clinical Research Consultant. February 2000 thru present.
3) Emerging Technology Partners, March 1997 thru January 2000, the biotech division of Economic Development Partnership of Alabama, Senior Vice President, Clinical Research and

Exhibit B

Regulatory Affairs.

4) Immunomedics, Inc., Morris Plains, NJ July 1996 thru January 1997; Vice President, Clinical Research.

5) Perimmune, Inc., Rockville, MD July 1995 thru July 1996; Director, Departments of Medical Research, Regulatory Affairs and Clinical Data Management.

6) Connaught Pasteur Merieux, Director of Clinical Research, Swiftwater, PA, March 1991 thru July 1995

7) Hoffmann-La Roche, Associate Director of Clinical Research, Antibacterials January 1989 to March 1991

**Clinical Research Experience**

1) Cooper Green Mercy Hospital, Birmingham, AL. Director of Hepatitis Clinic, Wrote and conducted three IRB-approved investigator-initiated clinical protocols. Several industry protocols.

2) Southern Clinical & Regulatory, as outlined above.

3) Emerging Technology Partners, Vaxin, and Tranzyme, as outlined above.

4) Letterman Army Institute of Research, Division of Blood Research, Staff Research Physician, dates as outlined above.

5) Hoffman La Roche, Connaught, Immunomedics, PerImmune, as outlined above.

6) USAF Medical Center Keesler, Clinical Research Laboratory, Research Associate, dates as outlined above.

**Academic and Institution Affiliations:**

1. University of Alabama, Birmingham.
   1. Biomedical Engineering, January thru December 2002.
   2. Clinical Assistant Professor, Division of General Internal Medicine, Department of Medicine, September 2007 thru present

2. Wallace Kettering Neuroscience Institute, Kettering, OH, visiting Research Associate, March 2005 thru February 2008.

**Pharmacy / Formulary Activities:**

Cooper Green Mercy Hospital, Pharmacy and Therapeutics Committee
Alabama State Medicaid Drug Utilization Review Committee

**FDA Experience:**

Annual reports, and protocol presentations to CBER, CDER, NIH and NCI
Outside inspections of IND's and NDA's for corporate partners
Preparation of PMAs and 510K for *in-vitro* diagnostic devices
Preparation of MAA and PLAs for radioimmunodiagnostic agents and ASI
Preparation of INDs.

**UNDERGRADUATE EDUCATION**

1968-1971 - Santa Monica College
1970-1972 - California State University, San Bernardino, (B.A., December, 1972)

**GRADUATE EDUCATION**

February 1972 thru January 1973 - University of California, Riverside, Department of Plant Physiology
February 1973 thru April 1977 - University of California, Los Angeles, Department Microbiology, Immunology and Medical Genetics, Ph.D, Microbiology, December 1977, Thesis Area: Comparative Immunology of Graft Rejection

## MEDICAL EDUCATION
September 1976 thru May 1980 - University of California, Los Angeles, School of Medicine, (M.D., June 1980)
June 1980-June 1983 - Residency in Internal Medicine, USAF Medical Center, Keesler AFB, MS

## MILITARY EDUCATION
Officers Candidate School, June 1976
Medical Indoctrination for Medical Service Officers, June 1980
Air Command and Staff College, graduate, June 1984
Biological Warfare Course, Ft. Detrick, MD
Biological Warfare refresher course, 1-05

29

## LICENSURES AND CERTIFICATION

National Board of Medical Examiners #234173; July 1, 1981
Diplomat, American Board of Internal Medicine   9-13-1989
Alabama # 23209, exp 31 Dec 2013
Mississippi , # 09518, exp. 6-30-14
New York # 180133-1, exp. 31 Oct 2015
New Jersey #25MA05357400 exp. 6-30-2015
DEA: BM5726661, exp. 1-31-2016
ACLS re-certification thru 18 October 2014


## PROFESSIONAL ORGANIZATIONS

* American College of Physicians, FELLOW, member since 1991
* The Academy of Physicians in Clinical Research, member since 2004
* American College of Legal Medicine, member since 2007


### Active Hospital Affiliations:

* Brookwood Medical Center, Birmingham, AL. Non-admit Staff 2004 to 2013, Hospitalist active admit 2013-present

* St. Vincent's Medical Center East, Trussville, Al 08/13/2012 -- present

* Vaughan Regional Medical Center, Selma, Alabama 2013.

* Biloxi Regional Medical Center, Biloxi, MS 2013


### Patents:

1) Vaccination by topical application of genetic vectors. China 98809932, November 22, 2000.  D-C C Tang; D H Marks; D T Curiel; UAB Research Foundation.
2) Noninvasive genetic immunization, expression products therefrom and uses thereof. US 6348450, February 19, 2002.  De-Chu Tang, Donald H. Marks, et al.
3) Vaccination by Topical Application of Genetic Vectors. US 06706693, March 16, 2004. De-Chu Tang, Donald H. Marks, et al.
4) Noninvasive genetic immunization, expression products therefrom, and uses thereof. US 06716823, April 6, 2004: Tang, De-chu C.; Marks, Donald H.; Curiel, David T.; Shi, Zhongkai.
5) Brain Function Decoding Process And System. US 7,627,370, December 1, 2009. Marks, Donald H.
6) Brain Function Decoding Process And System. Marks, Donald H. Patent application filed March 25, 2010, US Serial No. 12/731,264, claiming priority to the application filed on March 30, 2009, and assigned Serial No. 61/164,724.

# PUBLICATIONS

1. TenEyck R, Schaerdel AD, Lynett JE, Marks DH, et al: Stroma-free methemoglobin solution as an antidote for cyanide poisoning. A preliminary study. Clinical Toxicology 21(3):343-358, 1984.

2. Marks DH, et al: Pelvic hematoma after intercourse while on chronic anticoagulation. Annals of Emergency Medicine 13:554-556, 1984.

3. Marks DH, Patressi J, Chaudry IH: Effect of pyridoxalated stabilized stroma-free hemoglobin solution on the clearance of intravascular lipid by the reticuloendothelial system. Circulatory Shock 16:165-172, 1985.

4. Moore GL, Ledford ME, Marks DH: Clinical trials of an optimized additive solution for red cell storage which also preserves 2,3-DPG. Transfusion, Dec 1986.

5. Marks DH, et al: Pyridoxalated polymerized stroma-free hemoglobin solution for hemorrhagic shock in dogs. Military Med. 152(5):265-271, 1987.

6. Marks DH, et al: Antibody Response to Transfusion With Pyridoxalated glutaraldehyde-treated Hemoglobin Solution. Mil Med 152(9):473-477, 1987.

7. Marks DH, Hou KC, Medina F, Bolin RB. Removal of bacteria from blood. Mil Med. 1987 Mar;152(3):156-60.

8. Marks DH, et al.: Optimization of synthesis of pyridoxalated polymerized stroma-free hemoglobin solution. Mil Med 153:44-49, 1988.

9. Marks DH et al: Efficiency of Antibacterial Membrane and effect on Blood Components. Mil Med 153(7):337-340, 1988.

10. Davidson IJA, Drukker S, Hedlund B, Marks DH et al: Deleterious Effects of Stroma-free Hemoglobin Used As Resuscitative Fluid For Rats With Ischemic Intestinal Shock. Crit Care Med 16(6):606-609, 1988.

11. Marks DH, Medina F, Lee S, Blackmon A, Schnscherebá ST et al: Marks, D H (1988). "Removal of bacteria from blood by charcoal hemoperfusion". *Biomaterials, artificial cells, and artificial organs (0890-5533),* 16 (1-3), p. 135.

12. Moore GL, Marks DH, et al: Ascorbate-2-phosphate in Red Cell Preservation: Clinical Trials and Active Components. Transfusion 26(3):221-225, 1988.

13. Marks DH, et al.: Effect of Polymyxin B on *in vivo* hepatoxicity of hemoglobin. Mil

31

Med 154(4):180-184, 1989.

14. Keller, D, Koster, FT, Marks, DH et al. Safety and Immunogenicity of a Recombinant Outer Surface Protein A Lyme Vaccine. JAMA, June 8, 1994, p 1764-1768.

15. Sigal LH, Zahradnik JM, Lavin P, Patella SJ, Bryant G, Haselby R, Hilton E, Kunkel M, Adler-Klein D, Doherty T, Evans J, Molloy PJ, Seidner AL, Sabetta JR, Simon HJ, Klempner MS, Mays J, Marks D, Malawista SE A vaccine consisting of recombinant Borrelia burgdorferi outer surface protein A to prevent Lyme disease. Recombinant Outer-Surface Protein A Lyme Disease Vaccine Study Consortium. N Engl J Med (1998 Jul 23) 339(4):216-22.

16. Kanesa-thasan N, Smucny JJ, Hoke CH, Marks DH, Konishi E, Kurane I, Tang DB, Vaughn DW, Mason PW, Shope RE. Safety and immunogenicity of NYVAC-JEV and ALVAC-JEV attenuated recombinant Japanese encephalitis virus--poxvirus vaccines in vaccinia-nonimmune and vaccinia-immune humans. Vaccine (2000 Oct 15) 19(4-5):483-91.

17. VanKampen KR, Shi Z, Gao P, Zhang J, Foster KW, Chen DT, Marks D, Elmets CA, and Tang DC. 2004. Safety and immunogenicity of adenovirus-vectored nasal and epicutaneous influenza vaccines in humans. Vaccine. 2005 Jan 11;23(8):1029-36.

18. Marks DH, Adineh M, Gupta S: Determination of Truth from Deception Using Functional MRI and Cognitive Engrams. The Internet Journal of Radiology [peer-reviewed serial on the Internet]. 2006. Volume 5, Number 1.

19. Marks DH, Adineh M, Wang B, Gupta S, Udupa JK. Multidimensional Representation of Concepts as Cognitive Engrams in the Human Brain. The Internet Journal of Neurology [peer-reviewed serial on the Internet]. 2007. Volume 6, Number 1.

20. Marks DH, Adineh M, Wang B, Gupta S. Use of fMRI to Predict Psychiatric Adverse Effects of Interferon Treatment for Hepatitis C. Neuropsychiatric Disease and Treatment. 2007;3(5) 655-667.

21. Marks DH. Cardiomyopathy Due to Ingestion of Adderall. American Journal of Therapeutics. 15(3):287-289, May/June 2008.

22. Marks DH. Depression Leading to Suicide As An Adverse Effect of Metoclopramide. Internet Journal of Gastroenterology [peer-reviewed serial on the Internet]. 2007. Volume 5(2).

23. Marks DH. Dangers of OTC Herbal Supplements: Dilated Cardiomyopathy after Ingestion of TRIAC (triiodothyroacetic acid, Tiratricol). Internet Journal of Endocrinology [peer-reviewed serial on the Internet]. 2007. Volume 3(2).

24. Marks DH and Milby J. Interferon and Risk for Drug-Seeking Behavior. Internet Journal of Pain, Symptom Control and Palliative Care [peer-reviewed serial on the Internet]. 2009, 6(2).

24. Marks DH, Breggin PR, Braslow D. Homicidal Ideation Causally Related To Therapeutic Medications. Ethical Human Psychology and Psychiatry, 10 (3), 2008. Simultaneously published by agreement in The International Journal of Risk and Safety in Medicine, Volume 20 (4), 2008, pp 231-240.

25. Marks DH, Adinah M, Gupta S. MR Imaging of Drug-Induced Suicidal Ideation. Internet J Radiology [peer-reviewed serial on the Internet], 9(1), 2008.

26. Marks DH. Evaluation of Cognitive Impairment. Internet J Health. [peer-reviewed serial on the Internet]. 8(1), 2008.

27. Marks DH, Allison J, Ahmed S, Jeffers LJ, Morgan JR, Morgan PM. The Association of Race/Ethnicity, Sex, and Comorbidity with Hepatitis C Genotype 1 Treatment Response. Internet Journal of Gastroenterology [peer-reviewed serial on the Internet]. 7(2), 2008.

28. Marks DH. Case Report: Drug Toxicity Leading to Vanishing Bile Duct Syndrome and Cholestatic Jaundice. Internet Journal of Gastroenterology [peer-reviewed serial on the Internet]. 2009, Vol 8(1).

29. Marks DH, Valsasina P, Rocca M and Filippi M. Case Report: Documentation of Acute Neck Pain in a Patient Using Functional MR Imaging. Internet Journal of Pain, Symptom Control and Palliative Care [peer-reviewed serial on the Internet]. 2010, Vol 8(1)

30. Marks DH. Neurologic Complications of Vaccination with Outer Surface Protein A (OspA). The International Journal of Risk and Safety in Medicine, 2011 Jan 1;23(2):89-96.

31. Marks DH. Drug Utilization, Safety and Clinical Use of Actos and Avandia. The International Journal of Risk and Safety in Medicine. Volume 25, Number 1 / 2013, pp 39-51.


**Non-Peer Reviewed Articles**

1. Marks DH. Evaluation of Medical Causation, in Drug Injury: Liability, Analysis and Prevention, Third Edition, O'Donnell JT editor, L&J Publications, 2012.



2. Marks DH and Middlekoop T. Accutane: Focus on Psychiatric Toxicity and Suicide, in

Drug Injury: Liability, Analysis and Prevention, Second Edition, Chapter 20. O'Donnell JT editor. L&J Publications, 2005.

3. Marks DH. Minimal Length of Exposure to Vioxx Necessary for Toxicity, MEALEY'S LITIGATION REPORT: Arthritis Drugs Vol. 3, #1 June 2006.

4. Marks DH. Liver Toxicity At Normal Doses Of Acetaminophen. MEALEY'S LITIGATION REPORT: Arthritis Drugs Vol. 3, #3 August 2006.

5. Drug-Induced Pancreatitis. CME Activity produced for UAB Department of Medicine. 2008. http://www.alabamacme.uab.edu/courses/Pancreatitis/ID0429A.asp

6. Marks DH. Interrogation Using Functional MRI and Cognitive Engrams. The Journal of the Institute of Justice and International Studies, vol 8, 2008, pp 31-37. http://www.ucmo.edu/cjinst/2008%20Number%208.pdf

7. Marks DH. Drug-Induced Liver Disease, Part 1. CME Activity produced for UAB Department of Medicine. 2009. http://www.alabamacme.uab.edu/courses/Liver_Disease_Pt1/ID0461A.asp

8. Marks DH. Drug-Induced Liver Disease, Part 2. CME Activity produced for UAB Department of Medicine. 2009. http://www.alabamacme.uab.edu/courses/Liver_Disease_Pt2/ID0464A.asp

9. Marks DH. My patient has abnormal liver enzymes! What should I do ? CME Activity produced for UAB Department of Medicine. 2011.

10. Marks DH. Drug Induced Liver Disease, in Drug Injury: Liability, Analysis and Prevention, Third Edition. O'Donnell JT editor. L&J Publications, 2012.

11. Marks DH. My Patient's Liver is Enlarged. CME Activity produced for UAB Department of Medicine. 2012.

12. Drug Induced Liver Disease : Primer for the Primary Care Physician. Disease-A-Month, February 2014.

**Member of the Editorial Boards for the Following Publications:**

* The International Journal of Risk & Safety in Medicine

* The Internet Journal of Pharmacology

* Ethical Human Psychology and Psychiatry

34

# Donald H. Marks, M.D., Ph.D.
Internal Medicine, Medication Adverse Effects and Microbiology

| | | |
|---|---|---|
| 9340 Helena Road | | phone: 1-973-307-0364 |
| Suite F-414 | | Fax: 1-888-724-0953 |
| Hoover, Alabama 35244 | | e-mail: Extant4@Hotmail.com |

## CH. 74 EXPERT REPORT

Dear Mr. Gibson:

Thank you for the opportunity to evaluate the medical records of **Mario Moreno**. To review my qualifications, I have over 20 years of experience in pharmaceutical, clinical and hospital internal medicine. Additionally, I am a diplomat of the American Board of Internal Medicine, licensed to practice medicine in four states and a Fellow of the American College of Physicians. I also have a PHD in Microbiology with significant clinical and research experience. My professional experience is documented in my attached *curriculum vitae*.

As a practicing physician, I have the expertise and knowledge to render opinions regarding Mr. Moreno's death and whether the negligence of Beechnut Manor and its staff, in reasonable medical probability, caused his death. In this report I also incorporate by reference the Expert Report of Rhonda Rotterman, BSN, RNC dated August 24, 2014, as if set out verbatim.

**Documents Reviewed:**

1. Mario Moreno Death Certificate
2. Beechnut Manor Medical Records
3. Rhonda Rotterman, BSN, RNC's Standard of Care Expert Report

**Clinical Summary:**

Mario Moreno ("Moreno") was a newly admitted resident of Beechnut Manor a residential nursing and rehabilitation facility. Upon admittance on April 13, 2013, Beechnut Manor staff observed Moreno suffered from an impaired level of consciousness, impaired balance, schizophrenia, seizures and a tendency to wander. A physician's examination performed on April 17, 2013, indicated Moreno required long term residential nursing home care and close supervision and assistance.

Mario Moreno's daily treatment regimen at Beechnut Manner included the following mind altering medications:

* Phenobarbital                                                  129.6mg

Exhibit 4

* Seroquil 200mg
* Depakote 2000mg
* Haldol 10mg in the morning, 10mg at hour of sleep
* Ativan .5mg twice a day
* Zoloft 50mg

Nursing notes indicate on May 23, 2013 at 10:15am, Moreno fell outside and was found lying on his side with lacerations and bruises to the left side of his face. Moreno was transferred to WHMC by ambulance, treated, and returned to Beechnut Manor at 3:00am.

On May 29, 2013, at 9:00am Nursing Notes indicate Moreno was "wandering about the facility, pushing key pads." At 1:30pm Moreno was found lying in the hallway near an exit door. Moreno was observed on his back with an "open area" identified on the back of his head. Moreno was in and out of consciousness. Emergency medical services were contacted and Moreno was transferred to WHMC.

The Death Certificate issued by the Texas Department of State Health Services – Vital Statistics indicates Moreno died on May 30, 2013 due to "Blunt Head Trauma."

**Standard of Care and Breach of Standard of Care**

Incorporating the standard of care as reported by Rhonda Rotterman, BSN, RNC, Mario Moreno's injuries are consistent with a breach of the reasonable standard of care required of a hospital when treating patients similar to Mario Moreno.

Mario Moreno's injuries are consistent with the type of injuries likely to be sustained by a mentally impaired patient who suffers multiple falls. Specifically, based on reasonable medical probability, bruises, lacerations, blunt head trauma and death are all reasonably foreseeable injuries when a cognitively impaired patient prescribed six different mind altering medications is improperly supervised and falls repeatedly. Causation in this case is extremely straightforward. Mario Moreno was prescribed and administered six different antipsychotic medications, was improperly supervised and fell on his head on two separate occasions, the latter of which directly preceded his death.

**Conclusion:**

I am familiar with the terms "negligence," "ordinary care" and "proximate cause." Based upon my review of the medical records and death certificate of Mario Moreno, it is my opinion that Beechnut Manor and its staff were negligent in the care and supervision of Moreno. The negligent acts outlined above were the proximate cause of Mario Moreno's fall and subsequent death caused by blunt force trauma Moreno suffered during that fall.

Sincerely,

Donald H. Marks, M.D., Ph.D.
Fellow, American College of Physicians

Licensed: AL, MS, NY, NJ

42



LexisNexis (R) Texas Annotated Statutes
Copyright © 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

\*\*\* This document is current through the 2013 3rd Called Session \*\*\*
\*\*\* Federal case annotations: July 9, 2013 postings on Lexis \*\*\*
\*\*\* State case annotations: July 31, 2013 postings on Lexis \*\*\*

CIVIL PRACTICE AND REMEDIES CODE
TITLE 4.  LIABILITY IN TORT
CHAPTER 74.  MEDICAL LIABILITY
SUBCHAPTER H.  PROCEDURAL PROVISIONS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 74.351  (2013)*

§ 74.351.  Expert Report

  (a) In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

    (b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

      (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

      (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

    (c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.



(d) to (h) [Reserved].

(i) Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

(j) Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.

(k) Subject to Subsection (t), an expert report served under this section:

(1) is not admissible in evidence by any party;

(2) shall not be used in a deposition, trial, or other proceeding; and

(3) shall not be referred to by any party during the course of the action for any purpose.

(l) A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

(m) to (q) [Reserved].

(r) In this section:

(1) "Affected parties" means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted by this section and does not include other parties to an action who are not directly affected by that particular act or agreement.

(2) "Claim" means a health care liability claim.

(3) [Reserved].

(4) "Defendant" means a physician or health care provider against whom a health care liability claim is asserted. The term includes a third-party defendant, cross-defendant, or counterdefendant.

(5) "Expert" means:

(A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

(B) with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of Section 74.402;

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

(D) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who

is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence; or

(E) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

(6) "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

(s) Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1) written discovery as defined in *Rule 192.7, Texas Rules of Civil Procedure*;

(2) depositions on written questions under *Rule 200, Texas Rules of Civil Procedure*; and

(3) discovery from nonparties under *Rule 205, Texas Rules of Civil Procedure.*

(t) If an expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of Subsection (a), the restrictions imposed by Subsection (k) on use of the expert report by any party are waived.

(u) Notwithstanding any other provision of this section, after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

**HISTORY:** Enacted by Acts 2003, 78th Leg., ch. 204 (H.B. 4), § 10.01, effective September 1, 2003; am. Acts 2005, 79th Leg., ch. 635 (H.B. 2645), § 1, effective September 1, 2005; am. Acts 2013, 83rd Leg., ch. 870 (H.B. 658), § 2, effective September 1, 2013.

**NOTES:**

Applicability. --
Acts 2005, 79th Leg., ch. 635 (HB. 2645), § 2 provides: "This Act applies only to a cause of action that accrues on or after the effective date of this Act. An action that accrued before the effective date of this Act is governed by the law applicable to the action immediately before the effective date of this Act, and that law is continued in effect for that purpose."
Acts 2013, 83rd Leg., ch. 870 (S.B. 658), § 3(b) provides: "*Section 74.351(a), Civil Practice and Remedies Code*, as amended by this Act, applies only to an action commenced on or after the effective date of this Act [September 1, 2013]. An action commenced before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose."
2005 amendment,
substituted "original petition" for "claim" in the first sentence in (a).
2013 amendment,
in (a), substituted "each defendant's original answer is" for "the original petition was" in the first sentence and in the third sentence, added "the later of" and substituted "report is served or the 21st day after the date the defendant's answer is filed" for "it was served"; and made a stylistic change.

LexisNexis (R) Notes: