# NO. 12-19-00255-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RACHEL B. HEAD, M.D. AND RACHEL B. HEAD, M.D., PLLC, APPELLANTS* | *§* | *APPEAL FROM THE 145TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *WILLIAM HAGAN AND LYSA HAGAN, APPELLEES* | *§* | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rachel B. Head, M.D. and Rachel B. Head M.D., PLLC (collectively "Dr. Head") appeal the trial court's order denying their motion to dismiss William and Lysa Hagan's suit against them. We affirm.

### BACKGROUND

On February 22, 2017, Mr. Hagan presented to Dr. Head complaining of urinary symptoms. Dr. Head performed a physical examination and determined that Mr. Hagan had a mildly enlarged prostate. She prescribed medication and scheduled a follow-up appointment. At the next appointment on March 22, Dr. Head performed a cystoscopy because Mr. Hagan's symptoms had not adequately improved. The next day, Mr. Hagan began experiencing fever and chills. Mr. Hagan also told his wife that he was concerned the cystoscope used by Dr. Head was not properly sterilized. Two days after the cystoscopy, Mr. Hagan was diagnosed with a urinary tract infection and prescribed antibiotics. Dr. Head also scheduled a greenlight laser prostatectomy to treat his other prostate and urinary symptoms. The greenlight laser prostatectomy was performed eight days after the cystoscopy, while Mr. Hagan still suffered from symptoms of the infection. Mr. Hagan continued to suffer fever, chills, and sweats for several months. Dr. Head reportedly failed to change Mr. Hagan's antibiotics or treatment for the infection despite repeated cultures that showed the infection was growing. In

June, an ultrasound performed on Mr. Hagan's prostate showed micro-abscesses. Dr. Head recommended and performed a second surgery. Nevertheless, Mr. Hagan continues suffering from incontinence and has undergone several procedures in an attempt to address his issues with no success.

Mr. and Mrs. Hagan brought a healthcare liability claim against Dr. Head.[1] They contend Dr. Head failed to maintain proper sterilization techniques, failed to change Mr. Hagan's antibiotic regimen when necessary, and performed a surgery while Mr. Hagan had an ongoing infection. All of these actions, the Hagans contend, fall below the accepted standard of care. In an attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, the Hagans served Dr. Head with an expert report and curriculum vitae of Dr. Barry R. Rossman. Dr. Head filed objections to Dr. Rossman's report, including an objection that Dr. Rossman's report was insufficient as to causation, and a motion to dismiss the Hagans's claims. Dr. Rossman voluntarily provided two supplemental reports, and Dr. Head objected that these reports also failed to adequately address causation. Following a hearing, the trial court overruled the objections and denied Dr. Head's motion. This appeal followed.

## EXPERT REPORT

In her sole issue, Dr. Head contends the trial court abused its discretion when it denied her motion to dismiss. Specifically, she urges that Dr. Rossman's report fails to adequately address causation and offers competing causation theories.[2]

### Standard of Review

A trial court's ruling on qualifications of a medical expert and the sufficiency of an expert's report under Chapter 74 is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Van Ness*, 461 S.W.3d at 142. However, in exercising its discretion, it is incumbent

---

[1] In addition to their claims against Dr. Head, the Hagans filed suit against the manufacturers of the cystoscope, Olympus Corporation of the Americas and Olympus America, Inc. Those claims are not part of this appeal and neither Olympus Corporation of the Americas nor Olympus America, Inc. are parties to this appeal

[2] We note that the argument section of Dr. Head's brief lacks any references to the record, Dr. Rossman's report, and case-specific facts. The argument section merely recites case law regarding Chapter 74 expert report requirements without explaining how Dr. Rossman's report fails to comply. As a result, Dr. Head's brief is technically deficient. *See* TEX. R. APP. P. 38.1. However, her background information expresses her argument against Dr. Rossman's report.

upon the trial court to review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit. *See id.* at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**Expert Report Requirements**

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017). The Texas Supreme Court has explained that "eliciting an expert's opinions early in the litigation [is] an obvious place to start in attempting to reduce frivolous lawsuits." *Palacios*, 46 S.W.3d at 877. The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). A valid expert report must fairly summarize the applicable standard of care; explain how a physician or health care provider failed to meet that standard; and establish a causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2017); *Potts*, 392 S.W.3d at 630.

A report need not cover every alleged liability theory to make the defendant aware of the conduct at issue, nor does it require litigation ready evidence. *Potts*, 392 S.W.3d at 631–32. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Id.* For the particular liability theory addressed, the report must sufficiently describe the defendant's alleged conduct. *Id.* Such a report both informs a defendant of the behavior in question and allows the trial court to determine if the allegations have merit. *Id.* If the trial court decides that a liability theory is supported, then the claim is not frivolous, and the suit may proceed. *Id.* If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. *Id.*

**Causation**

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Causation is often established in medical malpractice cases through evidence of a "reasonable medical probability" or "reasonable probability" that the alleged

3

injuries were caused by the negligence of one or more defendants. *Jelinek v. Casas*, 328 S.W.3d 526, 532–33 (Tex. 2010). In other words, the plaintiff must present evidence "that it is 'more likely than not' that the ultimate harm or condition resulted from such negligence." *Id.* (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399–400 (Tex. 1993)). An expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff. *See McKellar v. Cervantes*, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.).

A report is deficient if it states only the expert's conclusions about the standard of care, breach of the standard of care, or causation. *See Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.). An expert cannot simply opine that the breach caused the injury. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539. Rather, the report must explain, to a reasonable degree, how and why the breach of the standard of care caused the injury based on the facts presented. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539–40. The report must explain the basis of the expert's statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also Taylor v. Fossett*, 320 S.W.3d 570, 575 (Tex. App.—Dallas 2010, no pet.) (expert report must contain sufficiently specific information to demonstrate causation beyond conjecture).

In determining whether the expert report represents a good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report. *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing *Palacios*, 46 S.W.3d at 878). "We may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). "We determine whether a causation opinion is sufficient by considering it in the context of the entire report." *Ortiz*, 378 S.W.3d at 671.

**Analysis**

Dr. Head argues that Dr. Rossman's report is deficient because it does not adequately describe what Dr. Rossman believes caused Mr. Hagan's incontinence. Dr. Head further posits that Dr. Rossman's statements regarding causation are conclusory and that Dr. Rossman takes inconsistent causation positions.

In his report, Dr. Rossman explains why it is imperative that a doctor maintain a sterile environment for procedures and that the failure to do so can introduce bacteria into a patient's system. He further explains that Mr. Hagan contracted an infection from an unsterile cystoscope because he

did not have an infection prior to the cystoscopy. Dr. Rossman then explains how, in his opinion, Dr. Head's treatment fell below the standard of care following the infection. According to Dr. Rossman, Dr. Head failed to treat the infection appropriately by continuing an antibiotic regimen when the cultures demonstrated the infection was resistant to the prescribed antibiotic, Cipro. He further opines that Dr. Head's decision to perform the greenlight laser prostatectomy while Mr. Hagan suffered from an infection fell below the standard of care and contributed to the formation of the micro-abscesses, which led to the need for the Trans-Urethal Resection of the Prostate (TURP) surgery. Following the TURP surgery, Mr. Hagan has continued to have additional urinary and prostate complications. Dr. Rossman concludes his report with the following opinion:

> In Mr. Hagan's case, the failure to maintain a sterile field and/or the use of a contaminated cystoscope during the initial cystoscopy on 03/22/2017 clearly was the main risk factor that proximately caused Mr. Hagan's infection. Subsequently, failing to then adequately treat the infection led to a chronic infection in the prostate, with the development of micro-abscesses in the prostate, as noted by Dr. Head herself. This then necessitated the need for further surgical procedures, which were carried out in a surgical field that had not been completely treated with appropriate antibiotics, and in reasonable medical probability, proximately caused Mr. Hagan's problems of sphincter incompetence with resulting urinary incontinence. Simply put, the additional TURP procedure that was required as a result of the potentially preventable and inadequately/undertreated infection, disrupted the integrity of the sphincter mechanism proximately causing Mr. Hagan's ongoing problems of sphincter incompetence and associated urinary incontinence. These problems are ongoing and will, in reasonable medical probability, be permanent (or require additional surgery) as a damaged sphincter such as this does not regenerate its ability to adequately contract and control urinary continence over time.

Dr. Rossman's report is not conclusory. *See Jelinek*, 328 S.W.3d at 539-40. "Causation may be proven by evidence showing that a surgical procedure was performed that was contraindicated or that preoperative testing was warranted and that testing was likely to show the procedure should not have been performed or should have been performed differently." *Power v. Kelley*, 70 S.W.3d 137, 143 (Tex. App.—San Antonio 2001, pet. denied).

Furthermore, we disagree with Dr. Head that Dr. Rossman's report takes inconsistent positions. Based on a review of the entirety of Dr. Rossman's reports, he apparently believes Mr. Hagan contracted an infection when Dr. Head used an unsterilized cystoscope during a procedure. Dr. Rossman further believes that if Mr. Hagan's infection had been properly treated, Mr. Hagan would not have developed micro-abscesses and necessitated a second TURP, which caused further damage to Mr. Hagan. Contrary to Dr. Head's argument, these are not contradicting theories. Rather, Dr. Rossman's theories explain what care was expected, but not given, and "explain, factually, how

5

proximate cause is going to be proven." ***Abshire v. Christus Health Se. Tex***., 563 S.W.3d 219, 224 (Tex. 2018); ***Palacios***, 46 S.W.3d at 880.

The ultimate evidentiary value of the opinions proffered by Dr. Rossman is a matter to be determined at summary judgment and beyond. At this stage we do not require a claimant to marshal all his proof or present evidence in the report as if he were actually litigating the merits. ***Palacios***, 46 S.W.3d at 879. Accordingly, we hold that Dr. Rossman's reports, when read together, constitute an objective, good faith effort to comply with Chapter 74's requirement to provide a fair summary of his opinion with respect to the causal relationship between Dr. Head's alleged breach and Mr. Hagan's injury. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(*l*), (r)(6).

Based on the foregoing, we hold the trial court did not abuse its discretion in denying Dr. Head's motion to dismiss. Dr. Head's sole issue is overruled.

## DISPOSITION

Having overruled Dr. Head's sole issue, we ***affirm*** the trial court's order.

BRIAN HOYLE
Justice

Opinion delivered October 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 31, 2019

NO. 12-19-00255-CV

**RACHEL B. HEAD, M.D. AND RACHEL B. HEAD, M.D., PLLC,**
Appellants
V.
**WILLIAM HAGAN AND LYSA HAGAN,**
Appellees

---

Appeal from the 145th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C1934405)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the order denying the motion to dismiss.

It is therefore ORDERED, ADJUDGED and DECREED that the order denying the motion to dismiss of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **RACHEL B. HEAD, M.D. AND RACHEL B. HEAD, M.D., PLLC**, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*