# NO. 12-20-00245-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES DARIO KOERNER, D.O.,*<br>*APPELLANT* | § | *APPEAL FROM THE 145TH* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *TANENA PICKENS, INDIVIDUALLY*<br>*AND AS NEXT FRIEND OF ZANII*<br>*ALIZE ROYTAL DAVIS,*<br>*APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

James Dario Koerner, D.O. appeals the trial court's order denying his motion to dismiss Tanena Pickens' suit against him. We reverse and remand.

### BACKGROUND

On November 19, 2018, Dr. Koerner performed a caesarean section (c-section) on Pickens at Nacogdoches Memorial Hospital. During the delivery, the baby, Zanii Alize Roytal Davis, sustained a 2.5-centimeter face laceration on her left cheek. Pickens was characterized as a "high risk" pregnancy due to several factors including her weight, a history of polycystic ovarian syndrome, a history of marijuana use and cigarette smoking, and two prior c-sections. The post-operative note lists a "small scratch" on Davis's face, which was treated with triple antibiotic ointment and covered with steri-strips. Pickens and Davis remained in the hospital until November 21, when they were sent home with instructions to treat the laceration with antibiotic ointment for thirty days.

Pickens brought a healthcare liability claim against Dr. Koerner. She contends Dr. Koerner breached the standard of care in performing the c-section by the following acts or omissions: failure to use ordinary care in the administration of health care; failure to recognize

and alleviate the risks of a facial laceration to Davis; failure to utilize any techniques to decrease the chance or avoid lacerating the face of Davis; failure to tape up the pannus for appropriate visualization; failure to have a second physician assist in the procedure rather than having a midlevel provider; failure to move the uterine wall prior to incision; failure to use blunt entry into the uterine cavity prior to incision; failure to use bandage scissors; failure to remove any abdominal wall retractors if at all used prior to making the incision; failure to use additional instruments such as a "C Safe" scalpel; and other acts and omissions anticipated to be discovered.

In an attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, Pickens served Dr. Koerner with an expert report and curriculum vitae of Dr. Maria Pimentel-Alvarez. Dr. Koerner filed objections to Dr. Pimentel's report, including objections that Dr. Pimentel's report was insufficient as to standard of care and causation, and a motion to dismiss Pickens' claim. Following a hearing, the trial court overruled the objections and denied the motion to dismiss. This appeal followed.

## EXPERT REPORT

In four issues, Dr. Koerner contends the trial court abused its discretion when it denied his motion to dismiss. Specifically, in his second and third issues, he urges that Dr. Pimentel's report fails to adequately address standard of care and causation. In his fourth issue, he argues Dr. Pimental is unqualified to opine as to whether cosmetic surgery is required.[1]

### Standard of Review

A trial court's ruling on qualifications of a medical expert and the sufficiency of an expert's report under Chapter 74 is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015**); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Van Ness*, 461 S.W.3d at 142. However, in exercising its discretion, it is incumbent upon the trial court to review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that

---

[1] In his first issue, Dr. Koerner urges us to look beyond the four corners of the report to determine its sufficiency. However, the Texas Supreme Court has limited our review to the four corners of the expert report and curriculum vitae. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). As a result, we overrule this issue.

the plaintiff's claims have merit. *See id.* at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. ***Gray v. CHCA Bayshore L.P.***, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Courts review the sufficiency of the expert report by looking within the four corners of the report. ***Palacios***, 46 S.W.3d at 878.

**Expert Report Requirements**

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017). The Texas Supreme Court has explained that "eliciting an expert's opinions early in the litigation [is] an obvious place to start in attempting to reduce frivolous lawsuits." ***Palacios***, 46 S.W.3d at 877. The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. *See* ***Certified EMS, Inc. v. Potts***, 392 S.W.3d 625, 631 (Tex. 2013). A valid expert report must fairly summarize the applicable standard of care; explain how a physician or health care provider failed to meet that standard; and establish a causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); ***Potts***, 392 S.W.3d at 630.

A report need not cover every alleged liability theory to make the defendant aware of the conduct at issue, nor does it require litigation ready evidence. ***Potts***, 392 S.W.3d at 631–32. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Id.* For the particular liability theory addressed, the report must sufficiently describe the defendant's alleged conduct. *Id.* Such a report both informs a defendant of the behavior in question and allows the trial court to determine if the allegations have merit. *Id.* If the trial court decides that a liability theory is supported, then the claim is not frivolous, and the suit may proceed. *Id.* If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. *Id.*

**Standard of Care**

In his second issue, Dr. Koerner argues that Dr. Pimentel's report does not specify a clear standard of care or explain how such standard of care was breached.

Dr. Pimentel's report states, in pertinent part:

3

Ms. Tanena Picken's body habitus, being morbidly obese weighing 355 lbs (BMI >50) near the end of her pregnancy, having had 2 prior cesarean sections and a low-transverse uterine incision which was performed during the procedure can contribute to a difficult delivery which can lead to complications including the facial laceration of baby Zanii Alize Roytal Davis. Dr. Koerner's operative report did not include documentation to clarify if there was an excessively thin lower uterine segment, severity of adhesions in this case, whether or not the patient had been laboring and how low the fetus's head was in the pelvis. It seemed as it was just a routine regularly scheduled repeat cesarean section based on his documentation.

. . .

Facial lacerations during a C-section is (sic) a potential complication of the procedure, with an increased risk when performing a low-transverse uterine incision which was performed on Tanena Pickens. A low transverse uterine incision is the standard for uterine incisions. Facial lacerations are usually the result of improper procedures performed by the medical team during birth. Ob-gyns are trained to recognize and alleviate this risk. It is [] my opinion with a reasonable degree of medical certainty that the facial laceration sustained by this newborn baby could have been avoided. Given a patient with increased risk factors such as morbid obesity and having 2 prior cesarean sections which can cause thinning of the uterine wall, certain techniques and precautions need to be undertaken to decrease the risk of this complication: taping up the pannus for appropriate visualization, having a 2nd doctor assist in a complicated case with 2 prior cesarean sections rather than having a midlevel provider, moving the uterine wall prior to incision, blunt entry into the uterine cavity prior to incision, using bandage scissors, removing any abdominal wall retractors if at all used prior to making the incision. Additional instruments could be used such as the "C Safe" scalpel to prevent from happening.

There is no documentation in the operative report that Dr. Koerner used any of these techniques to decrease the chance or even avoid lacerating the face of Zanii Alize Roytal Davis. Therefore, Dr. Koerner breached the standard of care by not using these techniques.

Dr. Koerner urges that because the "low transverse uterine incision is the standard," he could not have breached the standard of care. However, Dr. Pimentel's report states that, given Pickens' additional risk factors of weight and prior c-section history, additional measures should have been taken. The report further states that Dr. Koerner's records do not reflect that any of the additional precautions were taken. As a result, we conclude that Dr. Pimentel's report informs Dr. Koerner of the specific conduct that Pickens has called into question. *See* **Palacios**, 46 S.W.3d at 379. We overrule Dr. Koerner's second issue.

**Causation**

In his third issue, Dr. Koerner argues that Dr. Pimentel's report does not meet Chapter 74's requirement to explain the causal connection between the alleged breaches in the standard of care and the injuries in question in a nonconclusory manner. He urges that the report assumes that an unfavorable outcome requires negligence without explanation.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm

4

would not have occurred.  *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.).  Causation is often established in medical malpractice cases through evidence of a "reasonable medical probability" or "reasonable probability" that the alleged injuries were caused by the negligence of one or more defendants. *Jelinek v. Casas*, 328 S.W.3d 526, 532–33 (Tex. 2010).  In other words, the plaintiff must present evidence "that it is 'more likely than not' that the ultimate harm or condition resulted from such negligence."  *Id.* (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399–400 (Tex. 1993)).  An expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff.  *See McKellar v. Cervantes*, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.).

A report is deficient if it states only the expert's conclusions about the standard of care, breach of the standard of care, or causation.  *See Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.).  An expert cannot simply opine that the breach caused the injury. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539.  Rather, the report must explain, to a reasonable degree, how and why the breach of the standard of care caused the injury based on the facts presented.  *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539–40.  The report must explain the basis of the expert's statements to link his conclusions to the facts.  *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also Taylor v. Fossett*, 320 S.W.3d 570, 575 (Tex. App.—Dallas 2010, no pet.) (expert report must contain sufficiently specific information to demonstrate causation beyond conjecture).

In determining whether the expert report represents a good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report.  *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing *Palacios*, 46 S.W.3d at 878). "We may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). "We determine whether a causation opinion is sufficient by considering it in the context of the entire report." *Ortiz*, 378 S.W.3d at 671.

With regard to causation, Dr Pimentel's report states the following:

> The failure of Dr. Koerner to recognize and take the proper precautions in this case caused the facial laceration that had led to the scarring and disfigurement of Zanii Alize Roytal Davis.

The report does not detail how taking any of the protective measures listed above would have prevented the laceration, or how the failure to implement the additional precautionary procedures caused the injury. As a result, we conclude the report simply contains Dr. Pimentel's conclusion that the breach caused the injury. *See Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539–40. Because this portion of the report is conclusory and deficient, we sustain Dr. Koerner's third issue. *See Ortiz*, 378 S.W.3d at 671.

**Qualifications**

In his fourth issue, Dr. Koerner urges the trial court abused its discretion by finding Dr. Pimentel is statutorily qualified.

Whether an expert witness is qualified to offer an expert opinion under the relevant statutes and rules lies within the sound discretion of the trial court. *Cornejo v. Hilgers*, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The expert's qualifications must appear in the four corners of the expert report or its accompanying curriculum vitae. *Id*. In a health care liability suit, "a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (West 2017); *see id.* § 74.351(r)(5)(C) (defining "expert" qualified to give opinion on causation as "a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence"); *Cornejo*, 446 S.W.3d at 120.

Under the Rules of Evidence, an expert witness may be qualified on the basis of "knowledge, skill, experience, training, or education" to testify on scientific, technical, and other specialized subjects, if the testimony would "help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702; *see Cornejo*, 446 S.W.3d at 121. "Thus, a plaintiff must show that her expert has knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject." *Cornejo*, 446 S.W.3d at 121 (internal quotations omitted). Not all licensed physicians are qualified to testify on all medical questions; but, at the other extreme, there is no requirement that a physician practice in the particular field for which he is testifying. *Id*. What is required is that the physician demonstrate that he is qualified to opine on the specific issue before the court. *Id*.

Dr. Koerner does not attack Dr. Pimentel's qualifications to opine on the standard of care, breach, or causation. In fact, it appears Dr. Pimentel, as a board-certified obstetrician and gynecologist who routinely performs cesarean sections, is qualified to provide those opinions. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.403(a); 74.351(r)(5)(C); TEX. R. EVID. 702; ***Cornejo***, 446 S.W.3d at 121. Instead, he urges that Dr. Pimentel is unqualified to testify that the baby will need cosmetic surgery in the future.

The relevant inquiry at this stage of the proceedings is whether the report "provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). At this preliminary stage, Pickens is not required to marshal all of her proof, including that supporting her claimed damages, because the relevant inquiry is whether her claim has merit. *See **Palacios***, 46 S.W.3d at 878-79. The expert report is not required to contain an expert opinion on damages, only on the causal relationship between the alleged failure and the harm or damages claimed; therefore, the report and curriculum vitae cannot be inadequate for failing to establish a qualification to provide an unnecessary opinion. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.403(a), 74.351(r)(5). As a result, we overrule Dr. Koerner's fourth issue.

## Opportunity to Cure

Pickens urges that, if the report is deficient, the case should be remanded to the trial court for a determination whether she should receive time to cure the deficiencies.

Chapter 74 allows the trial court to grant one thirty-day extension to cure a deficiency in an expert report, and a court must grant an extension if the report's deficiencies are curable. ***Id.*** § 74.351(c); *see **Scoresby v. Santillan***, 346 S.W.3d 546, 556-57 (Tex. 2011). In her response to Dr. Koerner's objections, Pickens requested the opportunity to cure any deficiencies. The report at issue is not so deficient to constitute no report at all, and Pickens is entitled to an opportunity to cure the deficiency. *See **Courtney v. Pennington***, No. 05-16-01124-CV, 2017 WL 3097664, at *4 (Tex. App.—Dallas July 21, 2017, pet. denied) (mem. op.). Therefore, we remand for the trial court to consider granting a thirty-day extension of time to allow Pickens to attempt to cure the deficiencies in Dr. Pimentel's expert report regarding the statutory element of causation.

7

## DISPOSITION

We *reverse* the trial court's order overruling Dr. Koerner's objections to Pickens's report regarding causation, and we *remand* the case to the trial court to consider whether to grant a thirty-day extension of time to allow Pickens to attempt to cure the deficiencies in the expert's report regarding the statutory element of causation.

BRIAN HOYLE
Justice

Opinion delivered August 4, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 4, 2021**

**NO. 12-20-00245-CV**

**JAMES DARIO KOERNER, D.O.,**
Appellant
V.
**TANENA PICKENS, INDIVIDUALLY AND**
**AS NEXT FRIEND OF ZANII ALIZE ROYTAL DAVIS,**
Appellee

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. C2035485)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and the cause **remanded** to the trial court to consider whether to grant a thirty-day extension of time to allow Tanena Pickens to attempt to cure the deficiencies in the expert's report regarding the statutory element of causation. In accordance with the opinion of this Court; all costs of this appeal are assessed against Appellee, **TANENA PICKENS**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*